# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

```
-----------------------------------------------------
ELSEVIER LTD., and                         )
JOHN WILEY & SONS, INC.,                   )
                                           )
                Plaintiff,                 )          11-CV-10026-RGS
                                           )
                v.                         )
                                           )
WHOIS PRIVACY PROTECTION                   )
      SERVICE, INC.,                       )
CHITIKA, INC.,                             )
CLICKSOR.COM, INC., and                    )
KAPIL DEV SAGGI,                           )
                                           )
                Defendants.                )
-----------------------------------------------------
```

**DEFENDANT CHITIKA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

Table of Authorities ...............................................................................................iii

I.     INTRODUCTION...............................................................................1

II.    FACTUAL BACKGROUND ...........................................................2

    A.    Plaintiffs Allege That Infringing Copies Of Their Books
        Have Been Made Available For Download
        By Unidentified Non-Parties In Unspecified Locations ..................2

    B.    The Only Allegations About Chitika Are That It
        Placed Ads On The Pharmatext Site ...............................................4

III.   ARGUMENT ....................................................................................5

    A.    The Complaint Does Not State A Claim For
        Direct Infringement........................................................................7

        1.  Plaintiffs have not alleged any infringement
            within the United States.............................................................7

        2.  The plaintiffs have not alleged any direct
            infringement by Saggi ...............................................................9

    B.    The Plaintiffs Cannot State a Claim For
        Contributory Infringement Against Chitika ...................................11

        1.    Plaintiffs nowhere allege that Chitika
             knew of any infringing activity ............................................12

        2.    Chitika did not materially contribute to any
             infringement .......................................................................13

    C.    The Plaintiffs Cannot State A Claim
        Against Chitika For Vicarious Infringement...................................17

        1.    The plaintiffs do not even attempt to allege that
             Chitika has any right or ability to control
             any infringement ................................................................18

        2.    As a matter of law, Chitika does not have
             a direct financial interest in the
             alleged infringement...........................................................19

IV.   CONCLUSION     .................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Arista Records, Inc. v. MP3Board, Inc.,*
    2002 U.S. Dist. LEXIS 16165 (S.D.N.Y. Aug. 29, 2002)..................................11

*Allarcom Pay Television, Ltd. v. General Instrument Corp.,*
    69 F.3d 381 (9th Cir. 1995) .............................................................................7

*Atlantic Recording Corp. v. Howell,*
    554 F. Supp. 2d 976 (D. Ariz. 2008) .............................................................9

*A&M Records, Inc. v. Napster, Inc.,*
    239 F.3d 1004 (9th Cir. 2001) .................................................................*passim*

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................................6, 9

*Capitol Records Inc. v. Thomas,*
    579 F. Supp. 2d 1210 (D. Minn. 2008) .........................................................9

*Demetriades v. Kaufmann,*
    690 F. Supp. 289 (S.D.N.Y. 1988)...............................................................12

*Ellison v. Robertson,*
    357 F.3d 1072 (9th Cir. 2004) .....................................................................20

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
    76 F.3d 259 (9th Cir.1996) ......................................................................13, 14

*Gershwin Pub'g Corp. v. Columbia Artists Man., Inc.,*
    443 F.2d 1159 (2nd Cir. 1971) .....................................................................11

*Jalbert v. Timothy Grautski,*
    554 F. Supp. 2d 57 (D. Mass. 2008) .............................................................11

*Johnson v. Gordon,*
    409 F.3d 12 (1st Cir. 2005).............................................................................10

*Kelly v. Arriba Soft Corp.,*
    336 F.3d 811 (9th Cir. 2003) .......................................................................11

*Litecubes, LLC v. Northern Light Products, Inc.,*
    523 F.3d 1353 (Fed. Cir. 2008)......................................................................8

*London-Sire v. Does 1-20,*
    542 F .Supp. 2d 153 (D. Mass. 2008).............................................................9

*Luvdarts LLC v. AT&T Mobility, LLC*,
    2011 WL 997199 (C.D. Cal. 2011)..............................................................7, 12

*Maldonado v. Fontanes*,
    568 F.3d 263 (1st Cir. 2009)......................................................................6, 12

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ................................................................................*passim*

*Miller v. Facebook, Inc.*,
    2010 U.S. Dist. LEXIS 31534 (N.D. Cal. March 31, 2010).............................6, 12, 13

*Online Policy Group v. Diebold*,
    337 F. Supp. 2d 1195 (N.D. Cal. 2004).........................................................11

*Parker v. Google, Inc.*,
    422 F. Supp. 2d 492 (E.D.Pa. 2006)............................................................20

*Perez Acevedo v. Rivero Cubano*,
    520 F.3d 26 (1st Cir. 2008)........................................................................5

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) .................................................................*passim*

*Perfect 10 v. Google, Inc.*,
    416 F. Supp. 2d 828 (C.D. Cal. 2006)...........................................................10, 15, 16

*Perfect 10, Inc. v. Visa Intern. Service Ass'n*,
    494 F.3d 788 (9th Cir., 2007) .................................................................*passim*

*Polygram Intern. Pub., Inc. v. Nevada/TIG, Inc.*,
    855 F. Supp. 1314 (D. Mass. 1994) ..........................................................17, 18, 19

*Rosenthal v. MPC Computers, LLC*,
    493 F. Supp. 2d 182 (D. Mass. 2007)............................................................17

*Sony Corp. of America v. Universal City Studios, Inc.*,
    464 U.S. 417 (1983) ..................................................................................16

*Stern v. Does*,
    2011 WL 997230 (C.D. Cal. Feb. 10, 2011) ...................................................9

*Subafilms, Ltd. v. MGM-Pathe Communications Co.*,
    24 F.3d 1088 (9th Cir. 1994) .......................................................................7

*Ticketmaster Corp. v. Tickets.com, Inc.*,
    2000 U.S. Dist. LEXIS 4553 (C.D.Cal. March 27, 2000)..................................10

*Update Art, Inc. v. Modiin Pub., Ltd.,*
   843 F.2d 67 (2d Cir. 1988) ......................................................................7, .8

*UMG Recordings, Inc. v. Bertelsmann AG,*
   222 F.R.D. 408 (N.D. Cal. 2004) ...........................................................7, 10

*Zvi Livnat v. Shai Bar Lavi,*
   1998 WL 43221 (S.D.N.Y. Feb. 2, 1998) .....................................................16

*Wolk v. Kodak Imaging Network Inc.,*
   2011 U.S. Dist. LEXIS 27541 (S.D.N.Y. March 17, 2011) ...........................18

## Statutes

17 U.S.C. § 106(1) .........................................................................................8

17 U.S.C. § 106(3) .........................................................................................8

## Other Authorities

David Nimmer & Melville B. Nimmer, NIMMER ON COPYRIGHT
(hereinafter "NIMMER"), § 12.04[A][3][b][i] .............................................6

## I.    **INTRODUCTION**

The plaintiffs are book publishers who want this Court to expand liability for copyright infringement far beyond the limits set by the Supreme Court and Courts of Appeal.  The publishers seek to impose copyright infringement liability on Chitika, Inc. ("Chitika"), a Massachusetts online advertising company, because it placed an advertisement on a website in India.  That website – unknown to Chitika – contained hyperlinks to allegedly infringing material that was available for download on still other, unspecified websites operated by unidentified non-parties located in unknown corners of the world.

The plaintiffs have not sued the individuals who directly infringed their copyrights. Instead, they have sued defendant Saggi, a resident of India who operates the website that merely displays links to the infringing works.  And, in an effort to extend liability for copyright infringement beyond secondary liability to tertiary and quaternary liability, the plaintiffs have sued Chitika.  They do not allege that Chitika knew about the infringement, and it did not.  Chitika was three or four steps removed from the infringing conduct, and the publishers never even contacted Chitika before suing.  The publishers do not allege that Chitika had the right or ability to control the infringing activity, and it does not.  Chitika does not have any relationship with the infringers or even know who they are.  The publishers simply want to stretch contributory liability beyond the established limits, apparently because Chitika is easier to find than the actual infringers.

Nothing in the text or purpose of the Copyright Act supports the far-reaching liability that the plaintiffs want this Court to create.  In fact, the Court of Appeals for the Ninth Circuit has already considered and twice rejected arguments that are nearly identical to the theory advanced by the plaintiffs here.  *See, e.g., Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007); *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788 (9th Cir. 2007).  This Court should similarly dismiss the claims against Chitika as a matter of law.

II.     **FACTUAL BACKGROUND**

A.  **Plaintiffs Allege That Infringing Copies Of Their Books**
    **Have Been Made Available For Download,**
    **By Unidentified Non-Parties In Unspecified Locations.**

The plaintiffs publish scientific textbooks.  Complaint, ¶ 10-11.  They allege that infringing copies of two of their textbooks are available for download from some unidentified websites operated by unknown third parties on computer servers located in unspecified locations. Id., ¶¶ 31-34.  The unknown operators of these unidentified websites are not parties here.

Rather, the plaintiffs have asserted two claims of copyright infringement against Kapil Dev Saggi, a resident of India who registered the domain name www.pharmatext.org, and who allegedly operated a website located at that address (the "Pharmatext site").  Complaint, ¶16-19; 28-31.   Notably, the plaintiffs do ***not*** allege that Saggi made, stored, or distributed infringing copies of the plaintiffs' textbooks at the Pharmatext site or on computers that he operated or controlled.  The plaintiffs allege only that the Pharmatext site contains thumbnail images of the covers of their books, with links to unidentified third party sites that apparently offer copies of the plaintiffs' textbooks for download.  *See* Complaint, ¶ 19 (the Pharmatext site "facilitate[s] the unauthorized reproduction and distribution of copyrighted works" by linking to other sites that offer infringing copies), *id.* at ¶¶ 20-21 (the Pharmatext site displays pictures of book covers and links to other sites from which copies could be downloaded).

The Complaint does not allege ***any*** facts regarding the content of the linked-to sites, or who operates them, or where they are located.  To the contrary, the plaintiffs have admitted that "the links provided by Pharmatext are all to anonymous 'blogs[,]' where the blogger does not reveal his or her identity."  *See* Plaintiffs' Memorandum of Law in Support of Their Motion for Preliminary Injunction ("Plaintiffs' Memo in Support of P.I."), ¶ 10.  The plaintiffs' "investigator"

– the husband of their counsel[1] – told this Court that "[i]n no case was [he] able to identify who was actually making the copies available for download."  Burke Aff., ¶ 8.

The plaintiffs likewise have not alleged any facts concerning the users of the Pharmatext site.  The Complaint does not allege how often, or even whether, any Pharmatext users have followed hypertext links away from the Pharmatext site to download infringing works from the linked-to sites.  The plaintiffs make no allegations about where Pharmatext's users are located, and how many, if any, unauthorized downloads have occurred in the United States.  They make no allegations about whether the display and use of the books, which are educational texts, may be a fair use under copyright law.  The plaintiffs apparently made no investigation into these facts, but simply asked Mr. Burke, "to see if in fact any of their titles could be downloaded for free."  Complaint, ¶ 22.  Apart from the single, apparently authorized instance that Mr. Burke describes, the plaintiffs do not allege that there were any other downloads of their books by anyone.

The only factual allegations relating to "direct" infringement, then, are (i) that Saggi, an individual residing in India, registered the www.pharmatext.org domain name, (ii) that the Pharmatext site displays thumbnail images of the covers of their books and hypertext links to unidentified third-party sites, (iii) that the unidentified third-party sites, which are located in unspecified locations, make unauthorized copies of plaintiffs' two books available for download, and (iv) that the husband of plaintiffs' counsel downloaded copies at plaintiffs' request.

To these allegations, the plaintiffs add the conclusory allegations that the unauthorized delivery and the unauthorized display of "copies of the covers" of their books "constitute[] willful infringement of [their] copyrights," Complaint, ¶¶ 28-29, and that "Defendant Saggi is directly

---

[1]     David Burke stated in his affidavit that, as of December 21, 2010, his wife was "an associate in the firm of plaintiffs' counsel, Kotin, Crabtree & Strong, LLP." Affidavit of David J. Burke ("Burke Aff."),  ¶ 1.  At the time plaintiffs' motion for a preliminary injunction was submitted, and until March 10, 2011, when this Court granted Ms. Burke's assented-to Motion to Withdraw as Attorney, she was also plaintiffs' counsel in this matter.

liable for the infringement carried out via Pharmatext." *Id.*, ¶ 31.  The plaintiffs do not allege what actually constitutes "the infringement carried out via Pharmatext," and nowhere allege that Saggi or the Pharmatext site actually made or delivered unauthorized copies of their books.

### B. The Only Allegations About Chitika Are That It Placed Ads On The Pharmatext Site.

As little as the Complaint alleges about the Pharmatext site and its users, it says even less about Chitika.  Chitika is a data analytics company that runs an on-line advertising network. Answer, ¶ 4.  Third-party advertisers pay Chitika to place their advertisements on websites.  *Id.* Chitika contracts with third parties, referred to as its "Publishers," who own and operate their own websites.  Chitika pays those Publishers for the right to present advertisements in designated locations on their sites, much as a media buyer might pay the owner of a billboard to display ads for its clients.  The ads that appear on Publishers' sites are determined automatically by Chitika's servers, without human intervention, using a complex proprietary algorithm that includes many factors.  *Id.*  Chitika does not possess any particular knowledge concerning the contents of a Publisher's site.  *Id.*, ¶ 25.  Chitika does not and cannot control the contents of its Publishers' sites; Publishers maintain full responsibility for a site's content and operation.  *Id.*; *see also* Chitika Terms and Conditions, Client's Obligations (Publishers "take sole responsibility for the Site, including all content and materials, maintenance and operation thereof").[2]  Chitika requires its Publishers to represent that their sites do not contain any infringing or illegal content.  *Id.*, Representations and Warranties, (ii).  Publishers also expressly agree not to display Chitika's ads on pages with infringing material or with any third-party copyrighted content.  *Id.*

In connection with their claims for infringement, the plaintiffs allege only the following:

- "Chitika holds itself out to public as 'a proven channel for targeting on-line consumers and qualified buyers.'"  Complaint, ¶ 25.

---

[2]        Chitika's terms and conditions, attached as Exhibit A to Chitika's Answer, are referenced in the plaintiffs' complaint and were submitted to the Court by the plaintiffs in support of their motion for a preliminary injunction.

- Chitika placed third-party advertisements on the Pharmatext site. *Id.*

- Chitika received money from advertisers whose ads appeared on the Pharmatext site, and Chitika paid a share of that money to Saggi. *Id.*, ¶ 26. The plaintiffs do not allege the amount that Chitika paid to Saggi, but Chitika states it in its answer that from August 2008 through December 2010, Chitika paid Saggi $513.93, or, on average, about $17.72 per month. Answer, ¶ 26.

Importantly, as the plaintiffs expressly acknowledge, any payments for ads flowed from Chitika to Saggi, in exchange for showing ads. In effect, Chitika was renting space to display its ads.

After alleging these scant facts, the plaintiffs make the unsupported and conclusory allegations that "Chitika directly profited from the infringement carried out through Pharmatext," and that Chitika "enabled Pharmatext to stay in the infringement business by supplying it with income." *Id.*, ¶ 33. The plaintiffs then declare that Chitika is liable for the copyright infringement allegedly facilitated by Pharmatext.

The plaintiffs conspicuously do not allege – because they cannot – that Chitika had any knowledge or notice of the alleged infringing activity supposedly facilitated by the Pharmatext site. To the contrary, although the plaintiffs discovered Pharmatext's supposed infringement on August 10, 2010, they never contacted Chitika or provided any notice before they filed this suit on January 6, 2011. Answer, ¶ 25. The Complaint also does not allege – because the plaintiffs cannot – that Chitika had any right or ability to control the alleged infringement.

## III.   ARGUMENT

"A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss." *Perez Acevedo v. Rivero Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). "To survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true.'" *Id., quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007).  To state a claim, plaintiffs must allege "more than labels and conclusions, and a formulaic

recitation of [the elements] of a cause of action[]."  *Miller v. Facebook, Inc.*, 2010 U.S. Dist.

LEXIS 31534, at *5-6 (N.D. Cal. March 31, 2010) (dismissing complaint for failing to plead facts

sufficient to state a claim for either direct or indirect infringement), *quoting Twombly*, 550 U.S. at

555.  This Court must ignore "[m]ere legal conclusions disguised as factual allegations," and focus

only on the well-pled facts of the Complaint.  *Facebook*, 2010 U.S. Dist. LEXIS 31534, at *9; *see

also Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir. 2009) ("we need not accept as true legal

conclusions from the complaint or naked assertions devoid of further factual enhancement.").

      The plaintiffs here allege that Chitika is liable for copyright infringement committed by the

Pharmatext site, apparently under a contributory infringement theory.  Complaint, ¶ 33.  To state a

claim for contributory copyright infringement, the plaintiffs must first identify a direct

infringement.  *See* David Nimmer & Melville B. Nimmer, Nimmer on Copyright (hereinafter

"Nimmer"), § 12.04[A][3][b][i].  They must then allege facts showing that Chitika intentionally

induced or encouraged the direct infringement.  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,

Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or

encouraging direct infringement").

      The Complaint does not state any claim for direct infringement.  It alleges only that the

Pharmatext site, operated by Saggi, a resident of India, linked to other third-party sites in

unspecified countries that offered allegedly infringing works.  Displaying hypertext links to

infringing works does not constitute infringement, and, in any event, Saggi's conduct did not

occur in the United States.  Even if the plaintiffs' allegations are construed, generously, to allege a

claim for direct infringement against the Pharmatext site, they do not state any claim against

Chitika for contributory infringement because their allegations are, as a matter of law, insufficient

to establish that Chitika knowingly made any material contribution to the alleged infringement.
Consequently, the claims against Chitika must be dismissed.

### A.     The Complaint Does Not State A Claim For Direct Infringement.

It is a truism that "[s]econdary liability for copyright infringement does not exist in the
absence of direct infringement by a third party." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d
1004, 1013, n. 12 (9th Cir. 2001). "[I]n order for Plaintiffs to allege that Defendants are
secondarily liable, Plaintiffs must allege underlying direct infringement for which particular
defendants are liable." *Luvdarts LLC v. AT&T Mobility, LLC*, 2011 WL 997199, *2 (C.D. Cal.
2011). The Complaint here does not allege any direct infringement within the territorial limits of
the United States or by Pharmatext that could give rise to secondary liability for Chitika. At most,
Plaintiffs have alleged only indirect liability for Pharmatext, for which Chitika cannot, as a matter
of law, be secondarily liable. *See UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 412
(N.D. Cal. 2004) (acknowledging that allegations of "tertiary infringement – vicarious or
contributory assistance to a vicarious or contributory infringer" would not state a claim, but
concluding that plaintiff had alleged sufficient facts to support claim of secondary liability).

### 1.     Plaintiffs have not alleged any infringement within the United States.

"It is well established that copyright laws generally do not have extraterritorial
application." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988); *see also*
*Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1093-95 (9th Cir. 1994) (*en*
*banc*) (describing the "undisputed axiom that United States copyright law has no extraterritorial
application" and refusing to overturn "over eighty years of consistent jurisprudence on the
extraterritorial reach of the copyright laws"). To allege infringement under U.S. copyright law, "at
least one alleged infringement must be completed ***entirely*** within the United States." *Allarcom*
*Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995) (emphasis

added) (U.S. copyright law inapplicable when infringing work was distributed to Canada);  *see also Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1366 (Fed. Cir. 2008) (Copyright Act requires plaintiffs to allege and prove that infringement took place within the United States as substantive element of claim).

Read in the light most favorable to the plaintiffs, the Complaint appears to allege infringement of two exclusive rights under copyright:  the right to make copies of the copyrighted work, 17 U.S.C. § 106(1), and the right to distribute such copies of the work.  *Id.*, § 106(3).  The plaintiffs allege that their books were copied and distributed without authorization, but they do not allege that  that any infringing copying took place entirely within the United States.  As the Second Circuit emphasized in *Update Art*, the location of the alleged copying is "crucial:"

> As the applicability of American copyright laws over the Israeli newspapers depends on the occurrence of a predicate act in the United States, ***the geographic location of the illegal reproduction is crucial.*** If the illegal reproduction of the poster occurred in the United States and then was exported to Israel, the magistrate properly could include damages accruing from the Israeli newspapers. ***If, as appellants assert, this predicate act occurred in Israel, American copyright laws would have no application to the Israeli newspapers.***

*Update Art,* 843 F.2d at 73 (emphasis added).  To the extent that the unidentified third parties made and stored infringing copies of the plaintiffs' books on their servers, the plaintiffs have affirmatively stated that they cannot identify who made those copies or where those servers were located.  *See* Burke Aff., ¶ 8; Plaintiffs' Memo in Support of P.I., ¶ 10.  Because the plaintiffs here have not alleged and cannot allege that the purportedly infringing copies of their books were made in the United States, our copyright laws have no application.

Similarly, with regard to their distribution right, the plaintiffs have alleged only that the unauthorized copies are made "available" for download from unidentified servers in unspecified locations.  *See* Complaint, ¶¶ 20-22; Burke Aff., ¶ 8.  The case law in this district establishes that merely making files available for download does not constitute a distribution under Section 106 of

the Copyright Act.  *London-Sire v. Does 1-20*, 542 F. Supp. 2d 153, 168-69 (D. Mass. 2008)

("Merely because the defendant has 'completed all the steps necessary for distribution' does not

necessarily mean that a distribution has actually occurred.").  Most recent decisions that have

addressed this issue in factually similar circumstances have reached the same conclusion.  S*ee*

*Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1218-19 (D. Minn. 2008) ("the plain

meaning of the term 'distribution' does not includ[e] making available and, instead, requires actual

dissemination."); *Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 983 (D. Ariz. 2008)

(the "majority of district courts have rejected the . . . 'making available' theory" and agree "with

the great weight of authority that § 106(3) is not violated unless the defendant has actually

distributed an unauthorized copy of the work to a member of the public.").[3]

  To satisfy the pleading requirements of *Twombly*, therefore, and to raise their right to relief

"above the speculative level," the plaintiffs must allege that there actually have been infringing

downloads within the United States.  The Pharmatext site operated out of India, and the plaintiffs

have no idea who operates the sites to which Pharmatext links, or where they are located.  *See*

Burke Aff., ¶ 8; Plaintiffs' Memo in Support of P.I., ¶ 10.  Moreover, the plaintiffs' Complaint is

bereft of a single fact concerning the users of the Pharmatext site, and it does not allege that

anyone other than Mr. Burke has ever downloaded textbooks into the United States from the sites

to which Pharmatext links.  The plaintiffs therefore have not alleged direct infringement.

  2. <u>The plaintiffs have not alleged any direct infringement by Saggi.</u>

  Even if the plaintiffs could come up with an infringement somewhere in the United States,

---

[3]  The plaintiffs have alleged that Mr. Burke, the husband of their counsel, "succeeded in downloading entire copies of Plaintiffs' books to his computer, without having to pay anything for them."  Complaint, ¶ 22.  Because the plaintiffs authorized and directed this conduct, it is not infringement.  *Id.* (plaintiffs asked counsel "to see if in fact any of their titles could be downloaded for free").  Even absent Plaintiffs' authorization, Mr. Burke's conduct would not be infringement, but fair use, given that "reproduction of copyrighted material for use in litigation or potential litigation is generally fair use, even if the material is copied in whole." *Stern v. Does*, 2011 WL 997230, at * 12 (C.D. Cal. Feb. 10, 2011).

they would still be unable to state a claim against Chitika because they have not stated a claim for direct infringement by Saggi.  *See Napster*, 239 F.3d at 1013, n. 12 ("[s]econdary liability for copyright infringement does not exist in the absence of direct infringement by a third party.").[4]  To plead a claim for direct infringement against Saggi, Plaintiffs must allege facts showing that (1) they own a valid copyright; and (2) Saggi copied their original work, or otherwise infringed one of their exclusive rights.  *See, e.g., Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005).

Even after all inferences are drawn in their favor, the plaintiffs' allegations come up short; at most they suggest potential ***indirect*** liability for Saggi, who is himself two steps removed from the any infringement that could have occurred in the United States.[5]  Specifically, the plaintiffs allege that the Pharmatext site displayed links to still other unidentified sites, from which hypothetical users could download infringing copies of the plaintiffs' books.  Complaint, ¶¶ 19-20.  Plaintiffs do not allege that Saggi operated any of the linked-to sites, or that he ever stored, copied, distributed or otherwise provided unauthorized copies of the plaintiffs' books through the Pharmatext site.  They allege only that the Pharmatext site provided hypertext links.

Hypertext linking, however, "does not implicate any of the exclusive rights under copyright."  *Perfect 10 v. Google, Inc.*, 416 F.Supp.2d 828, 842 (C.D. Cal. 2006) (collecting cases on traditional hyperlinking), *rev'd on other grounds* 508 F.3d 1146 (9th Cir. 2007); *see also Ticketmaster Corp. v. Tickets.com, Inc.*, 2000 U.S. Dist. LEXIS 4553, *6 (C.D.Cal. March 27, 2000) (hyperlinking "does not itself involve a violation of the Copyright Act, since no copying is involved, the customer is automatically transferred to the particular genuine web page of the

---

[4]     While Plaintiffs may be able to convince this Court that some third party somewhere infringed their copyrights in the United States, they must state a claim for direct infringement by ***Pharmatext*** in order to maintain their action against Chitika.  Absent such a claim, Plaintiffs are left only with, at most, allegations of tertiary liability against Chitika, which do not state a claim.  *See UMG Recordings,* 222 F.R.D. at 412.

[5]     The plaintiffs have no idea who operates the linked-to sites, or where the computers running those sites are located.  *See* Burke Aff., ¶ 8.  In any event, no actionable infringement happens until users in the United States download the pirated books.  The Pharmatext site thus remains at least two steps removed from any such infringement.

original author."); *Online Policy Group v. Diebold*, 337 F. Supp. 2d 1195, 1202, n. 12 (N.D. Cal.

2004) ("hyperlinking per se does not constitute direct copyright infringement because there is no

copying."); *accord Arista Records, Inc. v. MP3Board, Inc.*, 2002 U.S. Dist. LEXIS 16165

(S.D.N.Y. Aug. 29, 2002).[6]   Consequently, the Complaint does not state a claim for direct

copyright infringement by Saggi, and thus no claim for contributory infringement by Chitika.

> ### B. The Plaintiffs Cannot State A Claim
> ### For Contributory Infringement Against Chitika.

The plaintiffs' failure to state a claim for direct infringement is not merely inartful

pleading; it is a fundamental defect that stems from their decision to sue Saggi and the Pharmatext

site rather than the people that actually engaged in the infringing conduct.  But even if Saggi and

Pharmatext did infringe directly, Chitika is not liable for that infringement, as a matter of law.

"One infringes contributorily by intentionally inducing or encouraging direct

infringement."  *Grokster,* 545 U.S. at 930; *Perfect 10, Inc., v. Visa Int'l Service, Ass'n*, 494 F.3d

788, 795 (9th Cir. 2007) ("one contributorily infringes when he (1) has knowledge of another's

infringement and (2) either (a) materially contributes to or (b) induces that infringement.").

Accordingly, to state a claim for contributory copyright infringement, the plaintiffs must allege

facts sufficient to establish that Chitika, "with knowledge of the infringing activity, induce[d],

cause[d] or materially contribute[d] to the infringing conduct . . ."  *Gershwin Pub'g Corp. v.

Columbia Artists Man., Inc.*, 443 F.2d 1159 (2nd Cir. 1971); *see also Jalbert v. Timothy Grautski*,

554 F. Supp. 2d 57, 72 (D. Mass. 2008) ("a defendant can be found to have contributorily

infringed a copyright if that defendant knew of the infringing conduct of another and induced,

caused, or materially contributed to that conduct").  "[K]nowledge and participation [are] the

---

[6]      To the extent that the plaintiffs would contend that the display of thumbnail images of the covers of their books is infringement, that argument fails.  The use of thumbnail images in the search context has been held to be a non-infringing fair use.  *See, e.g., Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 822 (9th Cir. 2003) (thumbnail was transformative display of photographer's copyrighted images that constitutes non-infringing fair use); *Perfect 10, Inc. v. Amazon.Com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) (thumbnail images of nude models are transformative displays that constitute fair use even where market allegedly existed for the thumbnails themselves).

touchstones of contributory infringement." *Demetriades v. Kaufmann*, 690 F. Supp. 289, 293 (S.D.N.Y. 1988).  Neither is alleged or present here.

          1.  <u>Plaintiffs nowhere allege that Chitika knew of any infringing activity.</u>

First, the plaintiffs do not allege anywhere in their Complaint that Chitika knew anything about the infringement that Pharmatext allegedly facilitated.  They allege only that Chitika "holds itself out to the public as 'a proven channel for targeting on-line consumers and qualified buyers.'" Complaint, ¶ 25.  The plaintiffs then claim that "Chitika . . . plac[ed] ads on the Pharmatext site because they believe Pharmatext users – in other words, people seeking to obtain pirated copies of copyrighted books – are a target audience for particular advertisers." *Id.*

This oblique suggestion does not satisfy the pleading requirements of Rule 12.  The plaintiffs' failure to allege any *facts* is fatal to their claims.  *See Maldonado*, 568 F.3d at 266 (courts disregard "naked assertions devoid of further factual enhancement."); *Luvdarts LLC*, 2011 WL 997199, at *2 (C.D. Cal. 2011) (dismissing contributory infringement claim by a publisher of mobile content who alleged only that the defendant wireless service providers had failed to block or account for alleged infringing activities of mobile phone users, but did not allege facts showing that defendants had knowledge of alleged infringement); *Facebook*, 2010 U.S. Dist. LEXIS 31534, at *12 (dismissing plaintiff's claim for contributory infringement, which relied on conclusory assertion that Facebook "induced and encouraged" the alleged infringement, on ground that plaintiff failed to allege facts as to what Facebook actually did, or refused to do, in support of the alleged infringement).

The case law requires the plaintiffs to support their conclusions with facts, *Maldonado*, 568 F.3d at 266, and, here, to allege facts showing that Chitika possessed "actual knowledge that specific infringing material" was somehow available through the Pharmatext site. *Amazon.com*,

508 F.3d at 1172.  The plaintiffs cannot allege such facts here; indeed, they never bothered to notify Chitika of the alleged infringement before filing suit.

>        2.   Chitika did not materially contribute to any infringement.

Importantly, even if the plaintiffs had provided notice, Chitika does not become liable for infringement by the Pharmatext site (or another of its Publishers) simply because it receives notice of potential infringement.  *Cf. Facebook*, 2010 U.S. Dist. LEXIS 31534, at *11 (although plaintiff specifically provided notice to Facebook, it still failed to state a claim for contributory infringement).  The law imposes liability for contributory infringement only on one who, with knowledge of infringement, substantially assists direct infringers in obtaining access to or distributing infringing content, and, further, continues to provide such assistance even after learning that his services are being exploited for that purpose.  *See, e.g., Grokster*, 545 U.S. at 937-40 (distributors of peer-to-peer, de-centralized file-sharing software contributed to their users' infringement of copyrighted works because they knew of infringing conduct, directly marketed their products for that use, and made no effort to filter or remove copyrighted material from the service); *Napster, Inc.*, 239 F.3d at 1022 (holding operator of centralized file-sharing service, which affirmatively assisted users in swapping copyrighted music files, liable for contributory infringement based on its knowledge that users were sharing copyrighted files, and its failure to block access to such files); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir.1996) (operators of swap meet where vendors circulated pirated tapes of copyrighted music contributorily infringed by "providing the site and facilities for known infringing activity").

The defendants in *Napster*, *Grokster*, and *Fonovisa* shared a common attribute:  the infringing materials at issue were stored, maintained, and available on systems or facilities ***actually operated by the defendants***.  Grokster and Napster made and distributed software that was known and intended to be used to store and share infringing music files.  *Fonovisa* involved

13

an analogous but lower-tech operation: a swap meet where the sale of pirated music proliferated.

*See Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788, 800 (9th Cir. 2007) ("The swap meet

operator in *Fonovisa* and the administrators of the Napster and Grokster programs increased the

level of infringement by providing a centralized place, whether physical or virtual, where

infringing works could be collected, sorted, found, and bought, sold, or exchanged.").

     Copyright owners like the plaintiffs have increasingly sought to expand the scope of

contributory liability in the online context, hoping to ensnare third parties who have had only

incidental relationships with the actual infringers but who may have deeper pockets.  Courts have

rejected these efforts.  In *Perfect 10, Inc. v. Visa Intern. Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007),

for instance, the owner of the copyrights in images of nude models sought to impose contributory

liability on Visa for processing credit card payments to the proprietors of numerous websites that

had "stolen [Perfect 10's] . . . images, altered them, and illegally offered them for sale online."

*Visa*, 494 F.3d at 793.  Although Visa's payment systems "ma[d]e it easier for . . infringement to

be profitable, and . . . therefore had the effect of increasing such infringement," Id., at 799, the

Ninth Circuit nonetheless affirmed the dismissal of the claims against Visa.  In doing so, it

distinguished its precedents in *Grokster*, *Napster*, and *Fonovisa*:

> The actual display, location, and distribution of infringing [material] in
> this case occurs on websites that organize, display, and transmit
> information over the wires and wireless instruments that make up the
> Internet. The websites are the "site" of the infringement, not Defendants'
> payment networks. Defendants do not create, operate, advertise, or
> otherwise promote these websites. They do not operate the servers on
> which they reside. [. . .]  Defendants merely provide a method of payment,
> not a "site" or "facility" of infringement.

*Visa*, 494 F.3d 799-800.

The plaintiffs here advance the very same argument rejected in the *Visa* case.  Chitika does not create, operate, advertise,[7] or otherwise promote the Pharmatext site or the sites to which Pharmatext links.  Chitika does not provide a "site or facility" of infringement; it simply places ads on the site, and its placement of those ads does nothing to assist users in finding the site or the allegedly infringing works to which the site links.  Even without ad content on the site, the infringing activity could continue, and thus the ad content is not a material contribution.  *See Visa*, 494 F.3d at 798 ("because infringement of Perfect 10's copyrights can occur without using Defendants' payment system, we hold that payment processing by the Defendants . . . does not constitute a 'material contribution' . . . .").

The plaintiffs allege, without any factual basis, that Chitika "enabled Pharmatext to stay in the infringement business," as if Pharmatext would not exist in the absence of the ad revenue it received.  *See* Complaint, ¶ 33.  This argument, too, was made by Perfect 10 and rejected.  In *Perfect 10, Inc. v. Google, Inc.*, 416 F. Supp. 2d 828, 856 (C.D. Cal. 2006), Perfect 10 sought to hold Google contributorily liable on the theory that Google "provid[es] a revenue stream to infringing websites . . . [by] placing . . . advertisements . . . on the[] . . . websites . . . [.]"  The Central District of California rejected this argument.  Although  Google's AdSense program provided some revenue to the infringing websites, Perfect 10 had failed to present "***any*** evidence establishing what that revenue is, much less that it is material . . . .  There is no evidence that these sites rely on Google AdSense for their continued existence or that they were created with the purpose of profiting from the display of AdSense advertisements."  *Id.* (emphasis in original).  Google's AdSense ads therefore did not materially contribute to the infringement by others.[8]  *Id.*

---

[7]   The ads that Chitika displays on the Pharmatext site are ads for third party advertisers, ***not*** ads for Pharmatext.  Pharmatext is not, and Plaintiffs have not alleged it to be, an advertising customer of Chitika.

[8]   The Ninth Circuit subsequently reversed the district court's decision on a different ground:  it held that Google's ***search engine*** provided material assistance to the infringing distribution of the works, by connecting the infringing websites with users. *See Perfect 10 v. Amazon.com*, 508 F.3d at 1172 ("Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to

The plaintiffs here similarly fail to allege *any* facts that Chitika materially contributes to Pharmatext's alleged infringement.  They make no allegations about how much revenue Pharmatext received from Chitika, much less the materiality of that revenue.  The plaintiffs offer only the conclusory assertion that Chitika enabled Pharmatext to stay in the infringement business.[9]  This formulaic recitation does not state a claim.  It is "'a gross generalization that cannot withstand scrutiny' to argue that 'supplying the means to accomplish an infringing activity and [even] *encouraging that activity through advertisement* are sufficient to establish liability for copyright infringement.'"  *Google*, 416 F. Supp. at 856 (emphasis in original), *quoting Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 436 (1983).

Chitika's placement of ads on the Pharmatext site, in exchange for the payment of less than $18 per month, Answer, ¶ 26, does not "bear [the requisite] direct relationship to the infringing acts . . ." to amount to contributory infringement.  *See Zvi Livnat v. Shai Bar Lavi*, 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998) (dismissing as matter of law contributory infringement action against advertisers who merely placed ads in a magazine that published infringing photos).  To hold Chitika liable on the basis of such a remote connection to the alleged infringement would expose a whole host "of peripherally-involved third parties [to liability], such as computer display companies, storage device companies, . . . software companies . . . and even utility companies that provide electricity to the Internet."[10]  *See Visa*, 494 F.3d at 800.  This Court, like others before it, should refuse plaintiffs' attempt to so drastically expand liability.

---

access infringing materials."). Unlike Google, Chitika does not offer a search engine, and nothing about Chitika's placement of advertisements on websites helps to match purveyors and consumers of infringing material.

[9]       Although the plaintiffs' failure to allege *any* facts on this point makes it impossible to determine what constitutes materiality, Pharmatext's average monthly revenues of $17.72 hardly represent the assurance of Pharmatext's continued viability as a going concern.  *See* Answer, ¶ 26.

[10]      Not even the dissent in *Visa* helps the plaintiffs here.  *See Visa*, 494 F.3d at 810-22. For all of its strenuous opposition to the majority opinion, the dissent articulates precisely why the plaintiffs' Complaint must be dismissed: "Contributory infringement requires *material* assistance to the infringing activity, and those [peripherally-involved third parties] the majority worries about would doubtless be absolved of liability because their contribution to the infringing activity is insufficiently material." *Visa*, 494 F.3d at 815 (emphasis in original).

### C. The Plaintiffs Cannot State A Claim
###    Against Chitika For Vicarious Infringement.

The Complaint specifically alleges a theory of contributory infringement against Chitika, and does not mention vicarious infringement.  Complaint, ¶ 33.  Vicarious infringement "is a concept related to, but distinct from, contributory infringement."  *Visa*, 494 F.3d at 802 (explaining and distinguishing the two theories of secondary liability). The plaintiffs have included the stray allegation that Chitika somehow "directly profited from the infringement carried out through Pharmatext." *Id.*  This "fact" – which is unsupported and untrue – is irrelevant to contributory liability, and does not state out a claim of vicarious liability.

One "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."  *Grokster*, 545 U.S. at 930.  To allege vicarious liability, Plaintiffs must allege facts sufficient to show "that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement." *Amazon.com*, 508 F.3d at 1173; *accord Rosenthal v. MPC Computers, LLC*, 493 F. Supp. 2d 182, 189 (D. Mass. 2007) ("a defendant corporation may be held vicariously liable under federal copyright law for the infringing acts of another if the defendant has: 1) the right and ability to supervise the infringing activity of the other and 2) an obvious and direct financial interest in the exploitation of the copyrighted materials.").  To state a claim for vicarious infringement, Plaintiffs must allege **both** control **and** benefit.  *Polygram Intern. Pub., Inc. v. Nevada/TIG, Inc.*, 855 F. Supp. 1314, 1327 (D. Mass. 1994) (describing test for vicarious infringement in context of performance of musical works and noting that "the court must evaluate facts to determine whether ***each and every element*** (in this case, benefit and control) has been established.") (emphasis supplied).  The plaintiffs do not and cannot allege either.

1. **Plaintiffs do not even attempt to allege that Chitika**
   <u>has any right or ability to control any infringement.</u>

"[A] defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Amazon.com*, 508 F.3d at 1173; *accord Polygram*, 855 F. Supp. at 1328 (defendants have control only "if they either actively operate or supervise the operation of the place wherein the [infringement] occur[s], or control the content of the infringing program.") (internal citations and quotations omitted). The Complaint does not even remotely allege that Chitika has any right or ability to control any of Saggi's activities, let alone the infringing activities of the sites to which the Pharmatext site links. As a matter of law, Chitika does not.

The plaintiffs have, again, modeled their case on the claims asserted by Perfect 10 against Google, whose AdSense agreements gave it "the right to monitor and terminate partnerships with entities that violate others' copyrights." *Perfect 10 v. Amazon.com*, 508 F.3d at 1173. The Ninth Circuit flatly rejected Perfect 10's argument. *See id.* Because "Google's right to terminate an AdSense partnership [did] not give Google the right to stop direct infringement by third-party websites," and Google could not "terminate those third-party websites or block their ability to host and serve infringing [content] on the Internet," Google lacked any ability to supervise and control the infringement, and therefore could not be liable for vicarious infringement. *Id.*, at 1173-74; *see also Visa*, 494 F.3d at 806 (Visa's ability to stop processing payments and thereby reduce profitability of infringement did not amount to an ability to control the infringement because the infringement "does not turn on the payment; it turns on the reproduction . . . and distribution of the images, which [credit card processors] do not do . . . .").[11]

---

[11]     The court further distinguished Google from the activities of the vicarious infringers in the *Napster* and *Fonovisa* cases, *supra*, on the ground that, unlike the swap meet operated in *Fonovisa*, or the host of the file-sharing service in *Napster*, "Google lacks the practical ability to police the infringing activities of third-party websites." *Amazon.com*, 508 F.3d at 1174; *see also Wolk v. Kodak Imaging Network Inc.*, 2011 U.S. Dist. LEXIS 27541, at *16-

Here, Chitika stands in a similar position to Google. Chitika's terms and conditions for Publishers, like Google's AdSense agreements, allow Chitika to terminate "the participation of any Site," and thereby discontinue payment of any ad revenue to the site. But exercising that right would not stop any direct infringement or terminate the site's ability to host and serve infringing content. Chitika's ability to stop advertising is not the ability to control infringement, because the infringement does not turn on the advertisements but on the reproduction and distribution of the infringing works. *See Visa*, 494 F.3d at 806. In addition, Chitika is even further removed from the alleged infringement than Google was, because the infringement is not performed by Saggi on the Pharmatext site, but by unknown third parties, with whom Chitika has no relationship whatsoever, on unidentified websites, where Chitika does not place ads.

Because Chitika does not have the right or ability to control the alleged infringement, it cannot be held vicariously liable.

> ### 2. As a matter of law, Chitika does not have <u>a direct financial interest in the alleged infringement.</u>

Given the plaintiffs' inability to allege that Chitika supervised and controlled the alleged infringement, the Complaint's conclusory assertion that Chitika directly profited from the infringement is irrelevant. *See Amazon.com*, 508 F.3d at 1173-74 (given Google's lack of supervision or control, refusing to consider whether Google received a direct financial benefit); *Visa*, 494 F.3d at 806 (same). In any event, to sufficiently allege a direct financial interest, the plaintiffs must allege some relationship between the infringing activity (here, making and distributing unauthorized copies of textbooks), and the revenue Chitika receives from advertisers. *See, e.g., Polygram*, 855 F. Supp. at 1330 (defendant must have "direct financial interest in the

---

17 (S.D.N.Y. March 17, 2011) (denying motion for preliminary injunction arising from alleged vicarious infringement against photo-sharing site on ground that site did not prescreen or police content and had no feasible mechanism for doing so). Similarly, Chitika has no practical ability to police its publishers, given that its technology has no ability to identify the precise nature of the content that appears on a publisher's website. *See* Answer, ¶ 25.

exploitation of copyrighted material"); *Ellison v. Robertson,* 357 F.3d 1072, 1079 (9th Cir. 2004) ("Financial benefit exists where the availability of infringing material acts as a 'draw' for customers."). Plaintiffs have not alleged any such relationship. Any claim for vicarious infringement must therefore fail. *See Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500 (E.D.Pa. 2006) (dismissing claim for vicarious infringement where plaintiff had not alleged any relationship between infringing activity and Google's advertising revenue) *aff'd*, 2007 U.S. App. LEXIS 16370 (3d Cir. July 10, 2007); *Ellison,* 357 F.3d at 1079 (no vicarious infringement where "record lacks evidence that AOL attracted or retained subscriptions because of the infringement or lost subscriptions because of AOL's eventual obstruction of the infringement").

## IV.   **CONCLUSION**

For all these reasons, the Complaint does not state a claim for contributory or vicarious infringement against Chitika. Accordingly, Chitika is entitled as a matter of law to the entry of judgment on the pleadings in its favor.

<div style="margin-left: 40%;">

Respectfully submitted,

CHITIKA, INC

/s/ Edward J. Naughton
Edward J. Naughton (BBO #600059)
Steven M. Veenema (BBO#672097)
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
617.856.8200
enaughton@brownrudnick.com
sveenema@brownrudnick.com

</div>

Dated : June 3, 2011

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Edward J. Naughton
Edward J. Naughton

Dated: June 3, 2011

# 1832856 v2 -