UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELSEVIER LTD.,<br>and<br>JOHN WILEY & SONS, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WHOIS PRIVACY PROTECTION<br>    SERVICE, INC.,<br>CHITIKA, INC.,<br>CLICKSOR.COM, INC., and<br>KAPIL DEV SAGGI,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 11-CV-10026-RGS |

**PLAINTIFFS' OPPOSITION TO DEFENDANT CHITIKA, INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs Elsevier Ltd. ("Elsevier") and John Wiley & Sons, Inc. ("Wiley") have

brought this action seeking redress for wholesale piracy that occurred on the website

known as www.pharmatext.org ("Pharmatext").[1] Plaintiffs have included defendant

Chitika, Inc. ("Chitika") in this action on the belief that Chitika contributed to the

infringement occurring on the Pharmatext site.

In response to plaintiffs' First Amended Complaint (hereinafter, for simplicity's

sake, the "Complaint"), Chitika has filed an answer and moved for judgment on the

pleadings.  However, Chitika's motion fails to conform to the requirements of Fed. R.

---

[1] Pharmatext was shut down in January by order of this Court, upon a finding that
plaintiffs had shown likelihood of success on the merits as to their claims of infringement
by Pharmatext.

Civ. P. 12(c), misconstrues the allegations in the Complaint, and is not well-grounded in law. The motion should be denied and this case allowed to proceed to discovery.

### I.   Chitika's Motion Violates F.R.C.P. 12(c) By Relying on Unsworn Factual Allegations

A motion for judgment on the pleadings "only has utility when all the material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain." 5C Wright & Miller, *Federal Practice and Procedure* (2004) (hereinafter "Wright & Miller"), §1367, at 208; *Institute for Scientific Information, Inc. v. Gordon & Breach, Science Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991); *Geupel v. Benson*, 704 F. Supp. 312, 313 (D. Mass. 1989). A Rule 12(c) motion brought by a defendant is treated much like a Rule 12(b)(6) motion to dismiss. *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). Thus, the focus must be on the content of the complaint, not the content of the answer. Averments made in a defendant's answer must be taken as denied. *Brinich v. Reading Co.*, 9 F.R.D. 420, 421 (D. Pa. 1949); Wright & Miller, §1368 at 253-254.

In contravention of this doctrine, Chitika attempts to introduce facts by way of its Answer. At page 4 of its memorandum it attempts to establish its own innocence by repeated reference to averments in its Answer, and on page 16 of its memorandum it attempts to argue that its participation in the infringement identified in the Complaint is not "material" because (allegedly) Chitika paid the main infringer only about $18 per month. Nor is the taint of these impermissible allegations limited to those specific pages. Chitika's attempt to paint itself as an innocent permeates its brief. Its protestations must be disregarded for all purposes of the present motion.

## II.   Chitika's Claim that No Direct Infringement Has Occurred Ignores the Facts Alleged, and Ignores Long-Standing Precedent.

The second major flaw in Chitika's motion lies in its attempt to deny that the Complaint alleges direct infringement.[2]  This takes two forms: a contention that plaintiffs' test downloads were not infringement, and a contention that the operator of the Pharmatext website, Kapil Dev Saggi ("Saggi"), did not directly infringe plaintiffs' copyrights.  Plaintiffs will deal briefly with each of these in turn.

### A.   Plaintiffs' Test Downloads Constituted Infringement.

Reduced to their essence, pages 7-9 of Chitika's brief rest entirely on one argument: that because plaintiffs authorized David Burke to make downloads of their works from the Pharmatext site, Burke's downloads were not infringing, and thus no direct infringement occurred in the United States.  Numerous courts have considered this precise issue and decided otherwise, however.  As the court observed in *Arista Records LLC v. Lime Group LLC*, 2011 U.S. Dist. LEXIS 35362, 26-27 (S.D.N.Y. Mar. 29, 2011):

> Defendants argue that Plaintiffs have not shown any downloads by LimeWire users beyond the single download performed by Plaintiffs' investigators. Defendants argue further that, because the only downloads that Plaintiffs have established were performed by their own investigators, Plaintiffs have not met their burden to show "unauthorized copying" of Plaintiffs' works. *This argument has been uniformly rejected by courts. Courts have consistently relied upon evidence of downloads by a plaintiff's investigator to establish both unauthorized copying and distribution of a plaintiff's work.* [emphasis added; internal citation omitted]

---

[2]  Chitika is correct that it cannot be held liable for indirect (contributory) infringement absent direct infringement by someone else.  Its mistake is in failing to recognize the clear allegations of direct infringement in the Complaint.

*See* cases cited at *id.*   *See also Arista Records LLC v. USENET.com*, 633 F. Supp. 2d

124, 150 fn. 16 (S.D.N.Y. 2009) and cases cited therein.[3]   Since, as *Arista Records* states,

the unauthorized copying and distribution are deemed to have occurred when the

downloads were delivered to Mr. Burke, those infringements occurred in the United

States.

### B.   Plaintiffs Have Alleged Direct Infringement by Saggi.

Chitika's second contention – that plaintiffs have not alleged direct infringement

by Saggi – simply fails to read the Complaint thoroughly.  Paragraph 29 of the Complaint

says:

> The unauthorized display of copies of the covers of Plaintiffs' Books [at the
> Pharmatext site] constitutes willful infringement of plaintiffs' copyrights.

See also ¶¶ 20-21 of the Complaint.  The exclusive right of public display is one of the

five enumerated rights granted by statute to copyright owners.  17 U.S.C. §106(5).[4]   The

covers of plaintiffs' books are protected by their copyrights just as much as the insides.

Thus, the Complaint clearly alleges direct infringement via the Pharmatext site.

---

[3]  Chitika's alternative argument that Mr. Burke's downloading was a fair use is little
short of bizarre. Fair use is an affirmative defense that may be raised by an accused
infringer. *Society of the Holy Transfiguration Monastery v. Gregory*, 685 F. Supp. 2d
217, 226 (D. Mass. 2010).  Mr. Burke was acting on behalf of plaintiffs; no one is
accusing *him* of infringement.  As the cases cited above hold, infringement lies not in an
investigator's making a download request, but in the other party's fulfilling the request.

[4]  As defined in 17 U.S.C. §101, "to perform or display a work 'publicly'" means--
    "(1) to perform or display it at a place open to the public or at any place where a
substantial number of persons outside of a normal circle of a family and its social
acquaintances is gathered; or
    "(2) to transmit or otherwise communicate a performance or display of the work to a
place specified by clause (1) or to the public, by means of any device or process, whether
the members of the public capable of receiving the performance or display receive it in
the same place or in separate places and at the same time or at different times."

Refusing to deal directly with this plain language of the Complaint, Chitika tries to innoculate itself from it in a footnote (footnote 6 on page 11 of its brief). Here Chitika makes the astonishing claim that the display of plaintiffs' book covers by Pharmatext was a "fair use."

As a procedural matter, a fair use defense has no place in a rule 12(c) motion. *See Chicago Lawyer, Ltd. v. Forty-Sixth Ward Regular Democratic Organization*, 1982 U.S. Dist. LEXIS 16929, 4-5, 220 U.S.P.Q. 511 (N.D. Ill. 1982) (fair use argument not appropriate in a Rule 12(b)(6) motion to dismiss). In weighing a fair use defense a court must consider at least the following factors:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
(2) the nature of the copyrighted work;
(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. §101. Fair use is thus a fact-intensive issue, involving a weighing of evidence, *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 21 (1st Cir. 2000). Furthermore, the burden of proving fair use lies on the accused infringer, *Society of the Holy Transfiguration Monastery v. Gregory*, 685 F. Supp. 2d 217, 226 (D. Mass. 2010). A finding of fair use is thus almost by definition outside the realm of judgment on the pleadings.

Even if one could theoretically conceive of an unauthorized reproduction being so obviously fair use that judgment on the pleadings could be entertained, this is not that case. As alleged in the Complaint, the display of plaintiffs' book covers is a crucial step in the process by which infringing copies of a book are distributed, each cover image

being accompanied by a link called "Download."  Since the facts alleged in the

Complaint must be taken as true for present purposes, there is no hope of a fair use

defense at this stage.[5]

In focusing on the infringement of their display right, plaintiffs do not in any way

mean to suggest that Saggi was not also engaged in direct infringement of their rights of

reproduction and distribution.[6]  A few brief comments on this point are in order.

Chitika seems to imagine that it cannot be held liable for contributory

infringement unless Saggi was the *direct* infringer of those rights, as opposed to being a

contributory infringer.  For this it cites only one case, *UMG Recordings, Inc. v.

Bertelsmann AG,* 222 F.R.D. 408 (N.D. Cal. 2004).  The discussion in *UMG* is pure dicta

on the issue, however.[7]  There is simply no rule that one who contributes to infringement

is exempt from liability merely because he has no privity with the direct infringer.  Nor is

---

[5] As for the cases cited by Chitika, they have no relevance here.  In *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003), and in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1168 (9th Cir. Cal. 2007) the court held it was permissible for a search engine to use small, low-resolution, "thumbnail" copies of images, since that use was solely for the purpose of improving the search for information on the internet, and any harm to the plaintiffs' markets for the real images was non-existent or highly speculative.  Neither case involved copies that were deliberately intended to encourage and facilitate the distribution of infringing material.

[6] In fact, plaintiffs have recently learned that one of the blogs to which the Pharmatext site was linked belonged to defendant Saggi, so there is identity between Pharmatext and at least one of the blogs used to deliver infringing copies. Exhibit A hereto is part of the response by Google to a subpoena from plaintiffs, identifying the owners of blogs linked to Pharmatext.  It identifies Saggi as operator of "pharma-docs.blogspot.com."

[7] Judge Patel only observed that in a previous, unpublished opinion, she had expressed "disfavor" toward the concept.  To the contrary is Benjamin H. Glatstein, "Tertiary Copyright Liability," 71 U. Chi. L. Rev. 1605 (Fall 2004), cited with approval in Nimmer and Nimmer, *Nimmer on Copyright* (Matthew Bender 2011), §12.04[A][5][b], p. 12-116.1.

there any reason for such a rule as a matter of policy.  If A knowingly abets B in assisting C to infringe, A should be just as contributorily liable for the infringement as B.

Secondarily, Chitika also seems to believe there is a rule that providing links to infringing content is not direct infringement.  There is no such rule.  The cases cited by Chitika fall into two categories, one irrelevant and the other quite different on the facts. In the first category falls, for example, *Ticketmaster Corp. v. Tickets.com, Inc.*, 2000 U.S. Dist. LEXIS 4553 (C.D. Cal. 2000), which holds that when A links to B's copyrighted material on B's site, that act of linking is not an infringement.[8]  In other words, where B has voluntarily made its content available on the Internet, and A merely provides a link to that content, that act does not create an infringing copy; it is "analogous to using a library's card index to get reference to particular items, albeit faster and more efficiently." *Id.* at *6.  That result is absolutely sound for reasons of both law and policy.

The other cases cited by Chitika – *e.g., Arista Records, Inc. v. MP3Board, Inc.*, 2002 U.S. Dist. LEXIS 16165 (S.D.N.Y. Aug. 28, 2002) – are superficially more germane; they at least concern the provision of links to *infringing* material.  But these cases too provide little instruction for the present case.  They involved defendants who had no specific dealings with the parties actively engaged in distributing unlawful copies, and no knowledge of any specific infringement.  The legal issue was whether those defendants, despite their ostensibly neutral role in providing "bulletin board" or other online connections between their customers, had sufficient constructive knowledge that their customers were using those connections to commit infringement, as to be held liable on a contributory basis.

The situation here is quite different.  As alleged in the Complaint, Pharmatext explicitly advertised the books for which free downloads were available, accompanying each advertisement with a "Download" link.  Complaint, ¶20; *see also* Affidavit of David J. Burke (Docket #7) at ¶4.  The separation between Pharmatext and the blog was purely an administrative detail; for all we know at this time, this structure may have been chosen purely for greater anonymity and secrecy.  Yet Chitika would have the court find that the blogger alone was a "direct" infringer, that Saggi/Pharmatext was only a "contributory" infringer, and that anyone knowingly assisting Saggi/Pharmatext would be a mere "tertiary" infringer and legally immune from liability.   The suggestion is unconscionable.

If this were a case of bricks-and-mortar infringement, and the following facts pertained:

- Building A has a huge sign on its front window, saying  "Free Books,"

- When a customer enters the shop, the owner directs him out the back door,

- Outside the back door is Building B, in which a second person hands the visitor an infringing copy,

would this court really find that the man in Building A was only a "contributory" infringer, and anyone assisting *him* was not liable because that would be "tertiary" infringement, as Chitika claims in its footnote 4?  Plaintiffs submit not.

---

[8] *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004) is to the same effect.

### III.   Plaintiffs Have in Fact Alleged that
###        Chitika Knew of Pharmatext's Infringement.

Chitika's next line of attack on the Complaint is to argue that plaintiffs have failed

to allege it had any knowledge of the infringement occurring on the Pharmatext site. This

is simply untrue.

Paragraph 25 of the Complaint says the following:

> According to plaintiffs' information and belief, many of these third-party ads
> were placed on the Pharmatext site by defendants Chitika and Clicksor. Chitika
> holds itself out to the public as "a proven channel for targeting on-line consumers
> and qualified buyers." (See http://chitika.com/blog/about-us.) Clicksor promises
> website owners to deliver "the most targeted and relevant online advertisements"
> for their sites (see http://www.clicksor.com/publishers-solution) and promises
> advertisers that "the right ads are delivered to the right audience at the right time"
> (see http://www.clicksor.com/contextual-advertising-network.) In effect, Chitika
> and Clicksor are placing ads on the Pharmatext site because they believe that
> Pharmatext users – in other words, people seeking to obtain pirated copies of
> copyrighted books – are a target audience for particular advertisers.

This is a perfectly clear allegation that Chitika was placing ads on the Pharmatext site

because Chitika knew the site contained pirated works and concluded that particular ads

would appeal to people who were looking for pirated works. No other inference is

reasonable. That ¶25 does not use the word "knowledge" is irrelevant; what counts is the

substance of the allegation, not the form.

### IV.   Plaintiffs Have Alleged Contributory Infringement by Chitika.

Chitika's last line of defense is to argue that the Complaint does not allege

grounds for holding it liable as a contributory infringer.[9] This argument too must fail.

_____

[9] Chitika also throws in a long argument relating to vicarious infringement (as distinct
from contributory infringement), at pp. 17-20 of its brief. The argument is beside the
point as plaintiffs have not accused Chitika of vicarious infringement.

Chitika relies on two cases.  The first of these, *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 856 (C.D. Cal. 2006), was a ruling on a motion for preliminary injunction and thus based on sworn testimony.  The court found that Perfect 10 had "failed to meet its burden" of establishing likelihood of success on the merits of its contributory infringement claim.  Such a ruling, based on a record of admissible evidence, cannot inform this Court's ruling on a 12(c) motion.[10]

Indeed, the passages from *Perfect 10* quoted by Chitika on page 15 of its brief repeatedly refer to the evidence introduced by the parties.  The court was visibly unimpressed by the plaintiff's evidence as to the revenue generated, the dependency of the sites on Google's AdSense traffic, etc.[11]  What the court did *not* say, however, was that the placement of advertising on infringing websites was *per se* non-actionable.  On the contrary, the *Perfect 10* court indicated that if the infringing sites were "created with the purpose of profiting from the display of AdSense advertisments," that might have changed the outcome and made Google liable for contributory infringement.  No *evidence* had been presented to establish that, however, so Perfect 10 had not established a basis for liability on that ground.  *Id.* at 856.

Here, by contrast, plaintiffs allege that "[s]ince nothing was paid by Pharmatext users for infringing copies, advertising appeared to be Pharmatext's only source of

---

[10]  Furthermore, the district court's entire discussion of this issue seems to have been discarded by the 9th Circuit on appeal, *sub nom. Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 729 (9th Cir. 2007), so it would be of no precedential value in any event.

[11]  It should be pointed out also that there is no evidence before the Court as to whether Chitika's operations, as a functional matter, bear any resemblance to Google's AdSense service.

income, with the possible exception of 'donations' which were solicited on the site."
Complaint, ¶24. So far as plaintiffs or this court have any basis for assuming at present,
advertising was indeed a motivating factor, even the key factor, in Saggi's setting up
Pharmatext in the first place. Under these circumstances there is a clear basis for liability
as a matter of common sense. Although, as noted above, this Court is free to disregard
*Perfect 10 v. Google*, there is also a basis for liability under a proper reading of that case.

The other case on which Chitika relies, *Perfect 10, Inc. v. Visa International Serv.
Ass'n*, 494 F.3d 788 (9th Cir. 2007), is superficially more germane but has its own
serious problems, and rests on facts quite different from those alleged in plaintiffs'
Complaint.

In *Perfect 10 v. Visa,* the plaintiff owned nude photographs of "the world's most
beautiful natural models." Foreign websites apparently made a business of stealing those
proprietary images, altering them, and illegally offering the results for sale online.
Perfect 10 sued Visa and MasterCard, the enormous and internationally known credit-
card processing associations, for contributory and vicarious copyright infringement and
various other torts. Perfect 10 alleged that Visa and MasterCard had continued to process
payments for their customers' sales of infringing images even after being put on notice of
specific infringements occurring at their customers' sites.

In its opinion, the Ninth Circuit acknowledged that "Defendants make it easier for
infringement to be profitable, which tends to increase financial incentives to infringe,
which in turn tends to increase infringement." *Id.* at 797. Yet the court held that this did
not contribute to infringement because, it said, "[e]ven if infringing images were not paid

for, there would still be infringement" – a questionable presumption for which it cited no evidence.

It is clear from the opinion as a whole that the Ninth Circuit acted out of fear for what a ruling against Visa and Mastercard would entail.  At the beginning of its analysis the court stated,

> We evaluate Perfect 10's claims with an awareness that credit cards serve as the primary engine of electronic commerce and that Congress has determined it to be the "policy of the United States--(1) to promote the continued development of the Internet and other interactive computer services and other interactive media [and] (2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. §§ 230(b)(1), (2).

*Id.* at 794.  And in a "parade of horribles," the court rhetorically asked,

> [W]hat would stop a competitor of a web-site from sending bogus notices to a credit card company claiming infringement by its competitor in the hope of putting a competitor out of business, or, at least, requiring it to spend a great deal of money to clear its name? Threatened with significant potential secondary liability on a variety of fronts under the dissent's proposed  expansion of existing secondary liability law, perhaps the credit card companies would soon decline to finance purchases that are more legally risky. They, after all, are as moved by Adam Smith's "invisible hand" as the next set of merchants. If that happened, would First Amendment rights of consumers be trampled? Would Perfect 10 itself be adversely impacted because no credit card company would want to take a chance on becoming secondarily liable?

*Id.* at 798.  In other words, said the Ninth Circuit, if we entertain this lawsuit we risk throwing a monkey-wrench into the entire machinery of online commerce.  (With all respect to Chitika, it can hardly claim the same significance.)

To date, no other Court of Appeals has had an opportunity to comment on the copyright portions of *Perfect 10 v. Visa*.  Scholars have criticized it severely, however. The leading treatise, Nimmer and Nimmer, *Nimmer on Copyright* (Matthew Bender 2011), has this to say at §12.04[A][3][a]:

> Given those multiple concessions that defendants "make infringement more profitable," which undeniably increases the incidence of infringement, the court's ultimate conclusion that "material contribution" is lacking becomes difficult to understand coherently.

*Id.* at p. 12-86.5.

Two other commentators criticize the court's statement that making infringement profitable, while not participating in it directly, adds "an additional step in the causal chain" and thus cannot be the basis of liability. 494 F.3d at 797. They call this "an example of a policy-based argument masquerading as an even-handed assessment of factual causation." Mark Bartholomew and Patrick F. McArdle, "Causing Infringement," 64 Vand. L. Rev. 675, 713 (April 2011). They add, "The Visa dissent had it right in contending that 'materiality turns on how significantly the activity helps infringement, not on whether [it is] characterized as one step or two steps removed from it.'" *Id.*, citing 494 F.3d at 812.[12]

In short, *Perfect 10 v. Visa*, on which Chitika understandably seeks to rely since it has no other reed to lean on, is at best a flawed opinion.

Moreover, even if this Court were prepared to follow the lead of *Perfect 10 v. Visa* despite that decision's manifest flaws, there are important factual distinctions here that militate against reaching the same result in this case. Specifically:

- Chitika, unlike Visa and Mastercard, is not just a passive processor of payments. As alleged in the Complaint, it actively seeks to match

---

[12] The stinging dissent in *Perfect 10 v. Visa* was written by Judge Alex Kozinski, regarded by many as the leading copyright jurist on the Ninth Circuit. For another comprehensive criticism of the majority opinion, see Note: "Perfect 10 v. Visa: The Future Of Contributory Copyright Infringement," 61 Okla. L. Rev. 865 (Winter, 2008).

advertisements to the content of websites. Complaint, ¶ 25. Presumably it sought to match advertisements to the content of Pharmatext.

- Doing so would have required Chitika to have knowledge of what was happening on the Pharmatext website.

- Pharmatext made it perfectly clear in big letters up front that it was in the business of disseminating "Free Pharma e-Books." Complaint, ¶ 20. No reasonable person could assume that any book advertised on the site was "free" in any legal way. (By contrast, in *Perfect 10 v. Visa* there is no indication that the websites selling unauthorized alterations of stolen images labelled them in any way that made clear they were illegal.)

- All of this means that Chitika must have had knowledge of the infringement going on at Pharmatext before it arranged for the placement of advertisements.[13] Chitika nonetheless proceeded to place the ads, thus providing the infringer with cash flow.

It is worth adding that Chitika did not just benefit Pharmatext monetarily, it contributed directly to the content of Pharmatext's web pages by placing ads there. That, too, is a factor not present in *Perfect 10 v. Visa*. Although that benefit may be hard to quantify in dollar terms, it is not negligible. Saggi, as the operator of Pharmatext, presumably believed that the ads enhanced his site, perhaps by giving it a more legitimate, e-commerce sort of look and feel. Certainly, Chitika will not wish to argue

---

[13] Thus, this case is quite different from *Livnat v. Lavi*, 1998 U.S. Dist. LEXIS 917 *12, 46 U.S.P.Q.2D 1300 (S.D.N.Y. 1998), which held that advertisers could not be held liable for contributory infringement simply because they placed ads in a magazine issue, one article in which contained infringing photographs. In that case the plaintiff seems not even to have alleged knowledge of the infringement.

that it degraded the website by what it added.   Regardless of how one tallies the "value added," the fact that Chitika was actively engaged in creating, along with Saggi, a composite web page on which infringements appeared, distinguishes Chitika from the passive money-conduit provided by Visa.

To dismiss this case against Chitika, given the allegations in the Complaint, this Court would have to hold as a matter of law that someone who knowingly places ads on a website that is entirely devoted to copyright infringement, thereby providing an income stream to the website operator and enhancing the website, is not liable for contributing to the infringement.   That is a "bridge too far," and plaintiffs are confident this Court will not cross it.

### Conclusion

Plaintiffs' Complaint alleges knowing contribution by Chitika to the operation of a website guilty of grossly willful infringement.   Chitika seems almost willfully blind to the meaning of these allegations.   Perhaps it genuinely believes in its own innocence, but innocence certainly cannot be presumed at this point. Chitika cannot dodge the Complaint at this stage on the basis of inadmissible factual allegations.

The legal basis for plaintiffs' Complaint has been shown here to be sound both in law and policy.   Plaintiffs are entitled to sue for infringements that occur at the instigation of their investigator.   (Indeed, how else but by an investigator would they ever have been able to prove what was going on at Pharmatext?) They are entitled to go after parties that assist persons such as Saggi, whether Saggi be characterized as a direct infringer (as he should be) or a contributory one.   They are entitled to sue a company that, as plaintiffs

assert, knowingly places money-making ads on a website devoted to piracy of their valuable copyrights.

Chitika has failed to show any basis for granting it judgment on the pleadings. Its motion should therefore be denied, and this case should proceed to discovery.

ELSEVIER LTD.,
and
JOHN WILEY & SONS, INC.,
Plaintiffs,

By their attorney,

Dated: June 30, 2011

/s/ William S. Strong
William S. Strong, Esq.,  BBO #483520
KOTIN, CRABTREE & STRONG, LLP
One Bowdoin Square
Boston, MA 02114
(617) 227-7031
(617) 367-2988 (fax)
wstrong@kcslegal.com

### CERTIFICATE OF SERVICE

I, William S. Strong, certify that I have this day electronically filed the foregoing document with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to CM/ECF participants.  All parties that have appeared in this case are CM/ECF participants.

June 30, 2011                    /s/ William S. Strong