UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------------------------
| ELSEVIER LTD., and | ) | |
| JOHN WILEY & SONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 11-CV-10026-RGS |
| | ) | |
| v. | ) | **LEAVE TO FILE** |
| | ) | **GRANTED ON** |
| WHOIS PRIVACY PROTECTION | ) | **NOVEMBER 18, 2011** |
| SERVICE, INC., | ) | |
| CHITIKA, INC., | ) | |
| CLICKSOR.COM, INC., and | ) | |
| KAPIL DEV SAGGI, | ) | |
| | ) | |
| Defendants. | ) | |
------------------------------------------------------


**DEFENDANT CHITIKA, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF
ITS MOTION FOR JUDGMENT ON THE PLEADINGS**


Edward J. Naughton (BBO #600059)
Steven M. Veenema (BBO#672097)
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
617.856.8200
enaughton@brownrudnick.com
sveenema@brownrudnick.com

*Attorneys for Chitika, Inc.*

Dated :  November 18, 2011

Plaintiffs' opposition to Chitika, Inc.'s ("Chitika") motion for judgment on the pleadings (the "Motion") fails to cure – indeed, places in stark relief – the fatal shortcomings in their Complaint. First, the Opposition confirms that plaintiffs have not alleged any infringement in the United States; the only U.S.-based conduct they can identify, their investigator's downloads, do not amount to direct infringement as a matter of law. Second, although the plaintiffs disclaim any theory of vicarious liability and embrace a theory of contributory infringement, they acknowledge that the appellate authority directly on point, *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788 (9th Cir. 2007), is squarely against them. They offer no persuasive reason for this Court to reject the Ninth Circuit's decision, and their allegations here do not state a claim under *any* accepted law of contributory infringement. Chitika's Motion should therefore be granted and the plaintiffs' claims against it dismissed.

## I.   THE PLAINTIFFS MISSTATE THE APPLICABLE LEGAL STANDARD.

The plaintiffs first tell this Court that it must ignore Chitika's Answer and only "focus . . . on the content of the complaint." *See* Opposition, p. 2. This assertion, for which plaintiffs cite no authority, is incorrect. A Rule 12(c) motion "implicates the pleadings *as a whole*." *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54 (1st Cir. 2006) (emphasis supplied). This Court may "consider[] the factual allegations in *both* the complaint *and* the answer." *Goodman v. Williams*, 287 F. Supp. 2d 160, 161 (D.N.H. 2003) (emphasis supplied).

The plaintiffs similarly argue – again, without authority – that this Court must disregard any facts contained in Chitika's Answer. The only fact they identify is Chitika's *admission* that it paid Pharmatext approximately $18 per month to rent ad space on the Pharmatext site. *See* Opposition, p. 2. Chitika admitted this fact in response to plaintiffs' allegation that Chitika "made payments to Pharmatext in exchange for the right to display ads on the Pharmatext site."

*See* Answer, ¶ 26.  Chitika's admission that it paid a specific sum to Pharmatext simply provides context and substance to the plaintiffs' own allegation, and it is undisputed.  It is properly before this Court for purposes of the current motion.  *See Aponte-Torres*, 445 F.3d at 54 ("Rule 12(c) [merely disallows] any resolution of contested facts.").

To the extent that the applicable standard of review requires the Court to disregard anything, it is the plaintiffs' many "legal conclusions couched as fact" and "threadbare recitals of the elements of a cause of action" that cannot be considered  *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Throughout their Opposition, the plaintiffs seek to avoid dismissal by relying on what they hope this Court will "assume" along with them, what they think "must have" happened, and what they characterize as a "clear basis for liability as a matter of common sense."  *See, e.g.,* Opposition, pp. 11, 14.  This kind of argument and speculation is no substitute for factual allegations, and cannot push the plaintiffs' purported claims against Chitika "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

## II.     THE PLAINTIFFS CANNOT OVERCOME THEIR FAILURE TO ALLEGE AN ACT OF DOMESTIC INFRINGEMENT.

Chitika demonstrated that the Complaint does not allege any act of direct infringement occurring within the United States, and thus cannot state a claim for contributory infringement against Chitika.  *See* Defendant Chitika, Inc.'s Memorandum of Law in Support of Motion for Judgment on the Pleadings ("Opening Br."), pp. 7-9, *citing A&M Records, Inv. v. Napster, Inc.*, 239 F.3d 1004, 1013, n. 12 (9th Cir. 2001) ("[s]econdary liability for copyright infringement does not exist in the absence of direct infringement by a third party"); *Allarcom Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995) ("at least one alleged infringement

must be completed entirely within the United States"); *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988) ("the geographic location of the [infringing activity] is crucial").

The plaintiffs concede in their Opposition that they cannot allege any act of direct infringement in the U.S. except for the downloads performed by Mr. Burke, their counsel's husband. *See* Opposition, pp. 3-4. The plaintiffs argue that downloads by investigators are sufficient to support an allegation for infringement. *See* Opposition, pp. 3-4. Yet, the cases on which they rely reveal that they have not, and cannot, allege infringement in this case.

First, the investigator cases cited by the plaintiffs emphasize the "well-established" proposition that "the lawful owner of a copyright cannot infringe its own copyright." *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1348 (8th Cir.1994). Thus, plaintiffs who rely on an investigator to allege an act of infringement are required to provide sufficient additional facts to show that someone ***other than*** their investigator has infringed one of their exclusive rights. In cases involving the infringement of the right to make copies, for instance, the plaintiffs' investigators requested copies, but it was the defendant who actually infringed by making the copies. *See id.* at 1347-48 (defendant made the infringing copies of photographs provided by plaintiffs' investigator); *RCA Records v. All-Fast Systems, Inc.*, 594 F.Supp. 335, 337 (S.D.N.Y. 1984) (defendant made infringing copies at investigators' request). In both these cases, moreover, the infringing copying took place in the United States.

In other cases, plaintiffs have relied on the conduct of investigators to allege infringement of their distribution right, because someone must *receive* an infringing copy to establish such infringement.[1] *See, e.g., Microsoft Corp. v. Rechanik*, 249 Fed. Appx. 476, 478 (7th Cir.2007)

---

[1] As set forth in Chitika's opening brief, merely making content available does not amount to distribution, which requires actual dissemination. *See London-Sire v. Does 1-20*, 542 F. Supp. 2d 153, 168-69 (D. Mass. 2008) ("Merely because the defendant has 'completed all the steps necessary for distribution' does not necessarily mean that a distribution has actually occurred."). Unlike a distribution, therefore, which necessarily involves a third party,

(investigator evidence established infringement of distribution right); *Warner Bros. Records Inc v. Walker*, 704 F.Supp.2d 460, 465 (W.D. Pa. 2010) (MediaSentry downloads established distribution); *Capitol Records, Inc. v. Thomas*, 579 F.Supp.2d 1210, 1216 (D. Minn. 2008) ("The Court holds that distribution to MediaSentry can form the basis of an infringement claim."); *Atlantic Recording Co. v. Howell*, 554 F.Supp.2d 976, 985 (D.Ariz. 2008) (investigators' downloads establish only distribution); *U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F.Supp.2d 314, 317-18 (E.D.N.Y.2007) (investigator evidence of unauthorized DVDs sold by defendants established infringing distribution).

In all of the cases cited by the plaintiffs, however, **both** the investigators **and** the alleged direct infringers were located in the United States. *See* Opposition, pp. 3-4; *Arista Records LLC v. Lime Group LLC*, 2011 U.S. Dist. LEXIS 35362, at *26-27 (S.D.N.Y. Mar. 29, 2011) (citing cases). Indeed, in the principal case cited by the plaintiffs, the investigators in question specifically *excluded* all non-U.S. content sources when they downloaded the infringing audio files at issue. *See Arista Records LLC*, 2011 U.S. Dist. LEXIS 35362, at *25. The plaintiffs there recognized what these plaintiffs did not: a download from a foreign website or user does not amount to an infringing act within the United States.

Consequently, while the allegations about Mr. Burke's downloads may establish *that* a distribution occurred, they establish only that the distribution occurred by a foreign distributor *outside* the United States. Mr. Burke's receipt of what some unidentified foreign actor distributed from outside the United States is not an act of infringement occurring entirely within the United States. *See Los Angeles News Service v. Reuters Television Intern., Ltd.*, 149 F.3d 987, 992 (9th Cir. 1998) (location of predicate act of infringement is key to applicability of U.S.

---

if a copyright holder simply instructs an investigator to reproduce a copyrighted work, such a reproduction cannot constitute infringement, because no other infringing actor is involved.

law); *Update Art, Inc.*, 843 F.2d at 73 (same). Because the plaintiffs concede that they cannot allege any other direct infringement, their claims against Chitika must be dismissed.

### III. THE PLAINTIFFS HAVE NOT ALLEGED FACTS TO STATE A CLAIM AGAINST CHITIKA FOR CONTRIBUTORY INFRINGEMENT.

Even if the plaintiffs could find a direct infringement within the U.S., the thin facts they allege still do not make out a claim for contributory copyright infringement. The plaintiffs must allege facts to show: (1) that Chitika knew that Pharmatext's activities infringed the plaintiffs' copyrights; and (2) that Chitika materially contributed to that infringement. *See, e.g., Jalbert v. Timothy Grautski*, 554 F. Supp. 2d 57, 72 (D. Mass. 2008), citing *Gershwin Pub'g Corp. v. Columbia Artists Man., Inc.,* 443 F.2d 1159 (2d Cir. 1971).

    A. The Plaintiffs Cannot Allege That Chitika
       Had Knowledge Of Any Infringement.

The plaintiffs' Opposition identifies only one alleged fact to support their argument that Chitika "must have had knowledge"[2] of the alleged infringement: a statement on Chitika's website that it is "a proven channel for targeting on-line consumers and qualified buyers." *See* Complaint, ¶ 25. Allegations that Chitika's ad network targets "online consumers and qualified buyers" are not even remotely allegations that Chitika knew what was on Pharmatext's website site or that such content was infringing. To the contrary, the only relevant portion of Chitika's website – the webpage containing Chitika's Terms and Conditions – speaks directly to the issue: publishers like Pharmatext must represent and warrant to Chitika that they do ***not*** offer infringing content on their websites. *See* Answer, Exhibit A.

Even if the plaintiffs could allege that Chitika knew what content was on Pharmatext's website, the law is clear that such allegations are not sufficient, because they do not establish that

---

[2]     Opposition, p. 14.

Chitika knew *whether* that content is infringing.  Most copyright owners show such knowledge by notifying putative defendants of the alleged infringement – something the plaintiffs chose not to do here – but even such notice is not enough to allege the knowledge necessary for an actionable claim of contributory infringement.  *See, e.g., Costar Group Inc. v. Loopnet, Inc.*, 164 F.Supp.2d 688, 707 (D. Md. 2001) ("the bare claim of infringement by a copyright holder does not necessarily give rise to knowledge of an infringement."); *Religious Tech. Ctr. v. Netcom On-Line Commc'n*, 907 F. Supp. 1361, 1374 (N.D. Cal. 1995) ("mere unsupported allegation[s] of infringement by a copyright owner may not automatically put a defendant on notice of infringing activity").[3]

The plaintiffs' allegations, no matter how generously read, are simply insufficient as a matter of law to state a claim for contributory infringement against Chitika.

### B. The Plaintiffs Cannot Allege That Chitika Materially Contributed To Any Infringement.

The plaintiffs' Opposition also ignores the prevailing law as to what constitutes a material contribution, focusing instead on arguing why this Court should ignore the leading case on the subject, *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007), which the plaintiffs admit is right on point.  *See* Opposition, p. 11.

The plaintiffs tell this Court that the Ninth Circuit's holding in *Visa* was shaped primarily by the panel's concern that they would wreak havoc on internet commerce if they permitted claims to proceed against Visa.  *See* Opposition, p. 12.  Starting from this premise – which is a mischaracterization of the *Visa* reasoning – the plaintiffs argue that this Court need not be

---

[3] The plaintiffs' inferences actually exemplify the degree to which their claim rests solely on speculation. For example, the plaintiffs assert that "[n]o reasonable person could assume that any book advertised on the site was 'free' in any legal way." Opposition, p. 14.  Not true:  many sites offer authorized free e-books or downloads, or portions thereof in connection with the sale of a hardcopy.  Other sites offer downloads of books in the public domain.  The availability of free e-books does not *necessarily* require one to conclude that there is infringement.

concerned about Chitika, which the plaintiffs claim is relatively insignificant to "the machinery of online commerce." *Id.*

But this argument is a caricature of what *Visa* actually says. The Ninth Circuit carefully applied the established law of contributory infringement to the facts before it. The application of that law required the Ninth Circuit to dismiss Perfect 10's claims for the same reason this Court must dismiss the plaintiffs' claims: because there, as here, Visa did not "create, operate, advertise or . . . promote the[ infringing] websites[,]" and its payment networks were not the "the 'site' of the infringement." *Visa*, 494 F.3d at 799-800.

Even Judge Kozinski's dissent in *Perfect 10 v. Visa*, which the plaintiffs prefer, does not help them. The dissent does not change established law: contributory infringement liability requires a specific act that **substantially** assists the direct infringer's **infringing** activity. *See Perfect 10 v. Visa*, 494 F.3d at 814 (Kozinski, J., dissenting) ("Material assistance turns on whether the activity in question **substantially assists** infringement . . . .") (emphasis supplied) (internal citations and quotations omitted). For another party's contribution to amount to substantial assistance to infringement, the alleged contributory infringer must have provided the site, facilities, and/or means to store or distribute the infringing content, *see Ellison v. Robertson,* 357 F.3d 1072, 1077-78 (9th Cir. 2004) (AOL alleged to have stored copies of plaintiff's works and provided access to such copies); *A&M Records v. Napster*, 239 F.3d 1004, 1022 (9th Cir. 2001) (Napster's hosted system "provide[d] the site and facilities for direct infringement."); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (same, with respect to swap meet); *Flava Works, Inc. v. Gunter,* 2011 WL 1791557, at *4 (N.D. Ill. May 10, 2011) ("defendants provide a website that stores infringing material, allows backup copies to be made, and encourages sharing"), or to have somehow assisted individuals interested in acquiring

infringing content to locate and gain access to it. *See Perfect 10, Inc. v. Amazon.Com, Inc.*, 508 F.3d 1146, 1170-73 (9th Cir. 2007) ("Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials."); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1170-71 (C.D. Cal. 2002) (age-verification company "actively reviewed and directed" the management of affiliated pornographic websites that contained infringing images, provided web development tools to such sites, and provided access to such sites); *In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 651–52 (N.D. Ill. 2002) (defendant "provided the software and the support services necessary for individual . . . users to connect with each other" and share infringing content).

The plaintiffs ignore this significant body of law, perhaps recognizing that they cannot allege that Chitika did anything to assist direct infringement. All they can allege is that Chitika "enabled Pharmatext to stay in the infringement business by supplying it with income."[4] Complaint, ¶ 33. The plaintiffs posit, in effect, that *any* business relationship that provides an alleged infringer with income is grounds for liability. That is not the law, and whatever income Pharmatext received from Chitika – approximately $18 per month – did not substantially assist the direct infringement at issue. To the contrary, Pharmatext earned advertising income when users clicked on ads that lead them *away* from the Pharmatext site. Chitika's rental of ad space on the Pharmatext site does not relate to infringement at all, because Pharmatext could earn that revenue regardless of the content offered on its site. Even if this Court accepted Judge Kozinski's somewhat more expansive view of what constitutes "substantial assistance,"

---

[4] In the same paragraph, the plaintiffs also allege that Chitika "profited from the infringement carried out through Pharmatext," but that allegation is only relevant to a claim for vicarious infringement, which the plaintiffs have expressly disclaimed. *See* Opposition, p. 9, n. 9. By plaintiffs' own admission, therefore, that allegation should be disregarded.

therefore, Chitika's advertising does not qualify. *See Perfect 10 v. Visa*, 494 F.3d at 815 (Kozinski, J., dissenting) (stressing that Visa was "alleged to provide an *essential* service to [direct] infringers," and are "***intimately and causally involved in a vast number of infringing transactions*** that could not be consummated" but for Visa's assistance) (emphasis supplied).

### C. The Plaintiffs' Theory Of "Tertiary Liability" Is Incoherent.

The plaintiffs tacitly admit in their Opposition that Pharmatext, which only provides hypertext links to the alleged infringers, is nothing more than a contributory infringer.[5] Although they argue that "Pharmatext explicitly advertised the books for which free downloads were available" and that it "accompan[ied] each advertisement with a 'Download' link," *see* Opposition, p. 9, neither activity directly infringes any of the publishers' exclusive rights. *See* 17 U.S.C. § 106. At most, advertising and providing access to infringing material is contributory infringement, as discussed above, such that Chitika's contribution would be one step even further removed from the alleged infringement.

The plaintiffs thus urge a new theory of "tertiary liability" discussed in a student case comment. *See* Opposition, p. 6, n. 7, citing Benjamin H. Glatstein, "Tertiary Copyright Liability," 71 U. CHI. L. REV. 1605 (Fall 2004) ("*Glatstein*"). *Glatstein* advocates imposing tertiary liability on parties like the venture capitalists who funded Napster, but there is more than just academic commentary on that subject: there's actual law. *See UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408 (N.D. Cal. 2004). In *UMG*, the court considered whether

---

[5] The plaintiffs attached an inadmissible document to their Opposition, which purports to establish that defendant Saggi, in addition to operating the Pharmatext site, also operates one of the blogs to which the Pharmatext site linked. *See* Opposition, p. 6, n. 6. Not only is the document in question inadmissible hearsay, it is not part of the pleadings and cannot be considered for purposes of the current motion. *See Aponte-Torres*, 445 F.3d at 54 (stating what court may consider on motion for judgment on the pleadings). Even if it could, however, the possibility that the plaintiffs can establish some relationship between the Pharmatext site and the blogs to which it linked does nothing to support their claims against Chitika, because Chitika is only alleged to have rented ad space on the Pharmatext site, not on any of the blogs to which it linked.

Napster's investors should face liability, and it refused to accept notions of tertiary liability. *See id.* at 412.[6] And, the Opposition's characterization notwithstanding, Nimmer's treatise does not "favorably" cite *Glatstein*. It merely refers to the paper in passing, referencing its title as support for the fact that tertiary liability may be the more proper term to "describe [some of] the theories that copyright owners pursue." David Nimmer & Melville B. Nimmer, NIMMER ON COPYRIGHT, § 12.04[A][5][a].

There is no case law support for the plaintiffs' "tertiary liability" theory because it is bad law and unsound policy. If there is a knowing and material contribution to direct infringement, then contributory infringement – i.e. secondary liability – applies. Indeed, identifying the materiality of the contribution is precisely how Judge Kozinski sought to avoid imposing liability on parties who provide only incidental services to alleged infringers. *See Perfect 10 v. Visa,* 494 F.3d at 815. "Tertiary liability," by contrast, is Orwellian: it means imposing liability on a party, like Chitika, that does *not* make a knowing and material contribution to infringement. Fortunately, no court has adopted this theory, and this Court should soundly reject it.

## IV.   CONCLUSION

The plaintiffs have not stated and cannot state a claim for contributory infringement against Chitika. Chitika is entitled to the entry of judgment on the pleadings in its favor.

---

[6] Judge Patel allowed the claim against the investors in Napster to proceed, but emphasized that it did *not* amount to tertiary liability, because the investors allegedly had assumed control of Napster's operations and thereby assisted the direct infringement occurring on the Napster site – a traditional secondary liability theory. *See id.* at 412.

                                                                           Respectfully submitted,

                                                                           CHITIKA, INC

                                                                           /s/ Edward J. Naughton  
                                                                           Edward J. Naughton (BBO #600059)  
                                                                           Steven M. Veenema (BBO#672097)  
                                                                           BROWN RUDNICK LLP  
                                                                           One Financial Center  
                                                                           Boston, MA 02111  
                                                                           617.856.8200  
                                                                           enaughton@brownrudnick.com  
                                                                           sveenema@brownrudnick.com

Dated : November 18, 2011

-11-

-12-

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                    /s/ Edward J. Naughton
                                    Edward J. Naughton

Dated: November 18, 2011