UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10026-RGS

ELSEVIER LTD., and
JOHN WILEY & SONS, INC.

v.

CHITIKA, INC.,
CLICKSOR.COM, INC., and
KAPIL DEV SAGGI

MEMORANDUM AND ORDER ON
DEFENDANT CHITIKA'S MOTION FOR JUDGMENT ON THE PLEADINGS

December 2, 2011

STEARNS, D.J.

In this copyright infringement case, plaintiffs Elsevier Ltd. and John Wiley &

Sons, Inc. (Wiley), claim that defendant Chitika, Inc., is liable for contributory

infringement of plaintiffs' books.  Presently before the court is Chitika's motion for

judgment on the pleadings.  The court heard oral argument on November 29, 2011.

BACKGROUND

The facts, in the light most favorable to plaintiffs as the nonmoving party, are as

follows.[1]  Plaintiff Elsevier is a publishing corporation organized under the laws of

---

[1] "Because [a motion for judgment on the pleadings] calls for an assessment of
the merits of the case at an embryonic stage, the court must view the facts contained
in the pleadings in the light most favorable to the nonmovant and draw all reasonable

England and headquartered in London.  Am. Compl. ¶ 1.  Plaintiff Wiley is a publishing

corporation organized under the laws of New York, with its principal place of business

in Hoboken, New Jersey.  *Id.* ¶ 2.  Defendant Chitika is "a data analytics company in

the business of on-line advertising."[2]  Answer ¶ 4.  It is organized under the laws of

Delaware and headquartered in Westborough, Massachusetts.  *Id.*  ¶ 4.  Defendant

Kapil Dev Saggi, a citizen and resident of India, operated the website

www.pharmatext.org (the Pharmatext website).  Am. Compl. ¶ 18.[3]

The Pharmatext home page was titled "**Pharmatext.org, Free Pharma E-**

**Books**."  *Id.* ¶ 20, Ex. B.  Below this title "were pictures of the front covers of various

books available through Pharmatext, and various ways of finding links to these and

other 'free' books.  Among the methods available for linking to 'free' books was a box

in which one could enter a title and conduct a search for that title."  *Id.*  "If a book was

available through Pharmatext, a picture of its front cover appeared on the screen along

with a hypertext link called 'Download.'  If one clicked on 'Download,' one would be

_____

inferences therefrom to the nonmovant's behoof."  *R.G. Fin. Corp. v. Vergara-Nunez* 446 F.3d 178, 182 (1st Cir. 2006).

[2] "Specifically, advertisers hire Chitika to place advertisements on websites that are owned and operated by third parties, who are referred to as 'publishers,' and Chitika pays those publishers to present advertisements on their sites."  Answer ¶ 4.

[3] The Pharmatext website was shut down by an Order of this court.  Am. Compl. ¶ 19; *see also* Dkt # 13 (Order on Plaintiffs' Motion for a Preliminary Injunction).

linked through to a page through which it was possible to download the entire text of the book at no cost." *Id.* ¶ 21.[4]

Plaintiffs allege that "[v]isitors to Pharmatext were greeted with heavy third-party advertising.  Since nothing was paid by Pharmatext users for infringing copies, advertising appeared to be Pharmatext's only source of income, with the possible exception of 'donations' which were solicited on the site." *Id.* ¶ 24.  Plaintiffs further allege that according to their "information and belief, many of these third-party ads were placed on the Pharmatext site by defendants Chitika and Clicksor[5]  Chitika holds itself out to the public as 'a proven channel for targeting on-line consumers and qualified buyers.'" *Id.* ¶ 25, quoting http://chitika.com/blog/about-us.[6]  Chitika receives payments from advertisers and pays Pharmatext a share of those payments in exchange

---

[4] In response to the allegations regarding the layout of the Pharmatext website, Chitika states that it "lacks knowledge or information sufficient to form a belief as to the truth of the allegations . . . and therefore denies them.  Further answering, Chitika states that the information and affidavits submitted to this Court by the Plaintiffs establish that the Pharmatext site contained only hypertext links to another website, operated not by Pharmatext but by some unknown person, from where the allegedly infringing copies were stored and distributed."  Answer ¶¶ 19-21.

[5] The court notes that Clicksor was served on February 10, 2011, and has not filed an answer.  *See* Dkt # 29.

[6] Chitika admits that the phrase "a proven channel for targeting on-line consumers and qualified buyers" appears on one of the pages on its website, in which Chitika provides a general description of its business.  Answer ¶ 25.

for the right to display ads on the Pharmatext website. Am. Compl. ¶ 26; Answer ¶ 26. Chitika alleges that over approximately twenty-nine months, from August of 2008 through December of 2010, its payments to Pharmatext "amounted to \$513.93, or approximately \$17.72 per month on average." Answer ¶ 26.[7]

Plaintiffs became concerned that unauthorized copies of their books were available through the Pharmatext website. Am. Compl. ¶ 22. They asked David Burke, a resident of Massachusetts, to investigate. On or about August 1, 2010, Burke succeeded in downloading entire copies of plaintiffs' books to his computer, without having to make any payment. *Id*. Plaintiffs at no time authorized anyone to store their books online or to deliver copies as downloads to users of the Pharmatext website. *Id*. ¶ 23.

On January 6, 2011, plaintiffs filed an action against defendants for copyright infringement. Plaintiffs allege two counts of copyright infringement: Count I pertains to the *Development and Validation of Analytical Methods*, edited by Christopher M.

---

[7] Plaintiffs contend that this allegation is inadmissible. However, factual allegations contained in the Answer may be considered on a Rule 12(c) motion. *See Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54-55 (1st Cir. 2006) ("A Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole. *See* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2004).").

Riley and Thomas W. Rosanske;[8] Count II pertains to the *Wiley Guide to Chemical Incompatibilities*, edited by Richard Pohanish and Stanley A. Greene.[9]  *Id*. ¶ 27. Plaintiffs allege that "Defendant Saggi is directly liable for the infringement carried out via Pharmatext."  *Id*. ¶ 31.[10]  Plaintiffs further allege that Chitika is "liable for contributory infringement," insofar as it "directly profited from the infringement carried out through Pharmatext," and "enabled Pharmatext to stay in the infringement business by supplying it with income."  *Id*. ¶ 33.

On January 6, 2011, following an ex parte motion hearing, the court (Woodlock, J.) granted plaintiffs' motion for a temporary restraining order, stating that "Defendant Whois Privacy Protection Service, Inc. shall not assign to any third party, including but not limited to the operator of the website identified by the domain name www.pharmatext.org; ownership or control of that domain name."[11]  *See* Dkt # 9

---

[8] Copyright in this book is registered in the name of Elsevier and bears the registration number TX0004381645.  *Id*. ¶ 10.

[9] Copyright in the second edition of this book – the relevant edition to this action – is registered in Wiley's name and bears the registration number TX0005753695. *Id*. ¶ 11.

[10] On October 26, 2011, this court granted plaintiffs' motion for alternative service, permitting plaintiffs to effect service on Saggi via email. *See* Dkt # 47 (Order for Alternative Service and Interim Relief).

[11] On November 16, 2011, plaintiffs voluntarily dismissed with prejudice all claims against Whois Privacy Protection Service, Inc. *See* Dkt # 49 (Notice of

(Temporary Restraining Order).  On January 14, 2011, this court (Stearns, J.) held a

hearing on plaintiffs' motion for a preliminary injunction.  At the hearing, plaintiffs'

counsel stated that the defendants had been served and were aware of the scheduled

hearing; however, representatives for the defendants did not appear.  The court granted

the motion for a preliminary injunction and ordered defendant Whois Privacy Protection

Service, Inc. to "take all steps necessary to disable" the Pharmatext website.  *See* Dkt

# 13 (Order on Plaintiffs' Motion for a Preliminary Injunction).

On March 16, 2011, plaintiffs filed an Amended Complaint.  On May 27, 2011,

Chitika filed an Answer to the Amended Complaint.  On June 3, 2011, Chitika filed the

present motion for judgment on the pleadings, arguing that plaintiffs have not stated a

cognizable claim for contributory infringement.

## DISCUSSION

A motion to dismiss brought after a complaint is answered is appropriately

treated as a motion for judgment on the pleadings.  *See* Fed. R. Civ. P. 12(c) ("After

the pleadings are closed – but early enough not to delay trial – a party may move for

judgment on the pleadings.").  "In the archetypical case, the fate of such a motion will

depend upon whether the pleadings, taken as a whole, reveal any potential dispute

about one or more of the material facts."  *Gulf Coast Bank & Trust Co. v. Reder*, 355

---

Dismissal with Prejudice).

F.3d 35, 38 (1st Cir. 2004); *see also Aponte-Torres*, 445 F.3d at 54 ("Like Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.").

"[T]o survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true . . .'" *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In reviewing a motion under Rule 12(c), as in reviewing a Rule 12(b)(6) motion, [a court] may consider 'documents the authenticity of which are not disputed by the parties; . . . documents central to the plaintiffs' claim; [and] documents sufficiently referred to in the complaint.'" *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007), quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

## I. Direct Infringement

Chitika first argues that plaintiffs have failed to allege a viable claim for direct infringement, which is a prerequisite to a claim for contributory infringement.[12] *See*

---

[12] Plaintiffs acknowledge that "Chitika is correct that it cannot be held liable for indirect (contributory) infringement absent direct infringement by someone else." Pls.' Opp'n at 3 n.2.

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement."); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.").

Chitika contends that plaintiffs have not alleged any act of direct infringement occurring within the United States. "It is well established that copyright laws generally do not have extraterritorial application." *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988). "[I]n order for U.S. copyright law to apply, at least one alleged infringement must be completed entirely within the United States." *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995).

Read in the light most favorable to plaintiffs, the Amended Complaint appears to allege infringement of two exclusive rights under copyright: the right to distribute copies of the copyrighted works, 17 U.S.C. § 106(3), and the right to display copies of the copyrighted works publicly, *id*. § 106(5). *See* Am. Compl. ¶¶ 28-29. Chitika argues that "[b]ecause the plaintiffs here have not alleged and cannot allege that the purportedly infringing copies of their books were made in the United States," U.S. copyright law has no application. Def.'s Mem. at 8. "Similarly, with regard to their distribution right, the plaintiffs have alleged only that the unauthorized copies are made

'available' for download from unidentified servers in unspecified locations." *Id.*, citing Am. Compl. ¶¶ 20-22.

Plaintiffs, for their part, contend that the "test downloads" performed by their investigator, David Burke, constitute direct infringement. In support of this argument, plaintiffs rely on *Arista Records LLC v. Lime Group LLC*, 2011 WL 1641978, at *8 (S.D.N.Y. Apr. 29, 2011) (stating that "[c]ourts have consistently relied upon evidence of downloads by a plaintiff's investigator to establish both unauthorized copying and distribution of a plaintiff's work."). However, in *Arista Records*, both the investigators and the alleged direct infringers were located in the United States. *See* 2011 WL 1641978, at *7 (stating that plaintiffs' investigators "filtered the results for users located in the United States . . . ."). In contrast, here, the alleged direct infringer (Mr. Saggi) is believed to be located in India.[13] Thus, Burke's downloading of unauthorized copies of plaintiffs' books, distributed by Saggi or other unidentified (and potentially

---

[13] Plaintiffs state that they "have recently learned that one of the blogs to which the Pharmatext site was linked belonged to defendant Saggi, so there is identity between Pharmatext and at least one of the blogs used to deliver infringing copies." *See* Pls.' Opp'n at 6 n.6. As evidence, plaintiffs attach to their opposition a subpoena response from Google, which shows that Saggi is the operator of pharma-docs.blogspot.com. *See* Pls.' Opp'n - Ex. A. Chitika contends that this document is "inadmissible hearsay, it is not part of the pleadings and cannot be considered for purposes of the current motion." Def.'s Reply at 9 n.5.

foreign) actors,[14] does not constitute an act of direct infringement occurring entirely within the United States.  *Cf. Update Art*, 843 F.2d at 73 ("[T]he geographic location of the illegal reproduction is crucial.  If the illegal reproduction of the poster occurred in the United States and then was exported to Israel, the magistrate properly could include damages accruing from the Israeli newspapers.  If, as appellants assert, this predicate act occurred in Israel, American copyright laws would have no application to the Israeli newspapers.").

While it appears that Chitika may eventually be entitled to judgment on this ground (that is, plaintiffs' failure to allege any act of direct infringement occurring entirely within the United States), factual issues involving the structure of the Internet and the locus of the infringing activity remain (Where did the copying take place?  Where are the third-party websites and servers, from which unauthorized copies of plaintiffs' books were downloaded?).  These issues preclude the granting of the motion on this ground.

## II.  Contributory Infringement

Chitika argues that even if plaintiffs could state a valid claim for direct infringement, they have failed to establish that Chitika knowingly made any material

---

[14] In his affidavit, Burke states: "In no case was I able to identify who was actually making the copies available for download."  Burke Aff. ¶ 8.  At the hearing, both parties acknowledged that Pharmatext has no presence in the United States.

contribution to the alleged infringement. "One infringes contributorily by intentionally inducing or encouraging direct infringement." *Grokster*, 545 U.S. at 930. *See also Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) ("[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer.").

### A.  Knowledge

"[K]nowledge and participation [are] the touchstones of contributory infringement." *Demetriades v. Kaufmann*, 690 F. Supp. 289, 293 (S.D.N.Y. 1988). Perfect knowledge, on the other hand, is not required. "Although the defendant must have knowledge of the infringing activity, 'the defendant need only have known of the direct infringer's activities, and need not have reached the legal conclusion that those activities infringed a copyrighted work.'" *Jalbert v. Grautski*, 554 F. Supp. 2d 57, 68 (D. Mass. 2008), quoting Paul Goldstein, Goldstein on Copyright § 8.1 n.1 (2005). *See also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 487-489 (1984) (Blackmun, J., dissenting) ("[A] finding of contributory infringement has never depended on actual knowledge of particular instances of infringement; it is sufficient that the defendant have reason to know that infringement is taking place. . . . Nor is it necessary that the defendant be aware that the infringing activity violates the copyright

laws.").[15]

Chitika argues that plaintiffs do not (and cannot) allege facts showing that it had knowledge of any infringing activity, or that it knowingly caused or substantially contributed to any infringing activity. Chitika states that it

> simply offers technology that presents a display ad on a publisher's website. Chitika's technology selects the ad to display automatically, without human intervention, by means of a complex proprietary algorithm to present advertisements on a publisher's website, based upon many factors, including, among many others, information about the visitor to the website, terms entered into a search engine, and the words that appear on the publisher's website. Chitika did not and does not have any knowledge or notice of whether a site contains allegedly infringing materials, and it does not have any mechanism by which it can determine whether a publisher's site contains allegedly infringing materials. When publishers join Chitika's network, they expressly acknowledge that they have full responsibility for the content and operation of their sites, and they expressly represent that they do not contain any infringing or illegal content. Publishers also expressly agree not to display Chitika's ads on pages with infringing material or with any third-party copyrighted content. *See* [Answer - Ex. A] (Chitika's Terms and Conditions for Publishers). Chitika's network of publishers includes more than 100,000 sites. [Chitika] has no practical ability to police the content that appears on its publishers' sites, and Plaintiffs did not provide Chitika with any notice of

---

[15] *But see Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) ("[W]e hold that a computer system operator can be held contributorily liable if it 'has *actual* knowledge that *specific* infringing material is available using its system,' and can 'take simple measures to prevent further damage' to copyrighted works, yet continues to provide access to infringing works."); *Napster*, 239 F.3d at 1021 ("*Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, [907 F. Supp. 1361, 1371 (N.D. Cal. 1995)] . . . suggests that in an online context, evidence of actual knowledge of specific acts of infringement is required to hold a computer system operator liable for contributory copyright infringement.").

alleged infringement before filing this suit.

Answer ¶ 25.

Plaintiffs, for their part, allege only that Chitika "holds itself out to the public as 'a proven channel for targeting on-line consumers and qualified buyers.'" Am. Compl. ¶ 25. Plaintiffs do not allege facts showing that Chitika was familiar with the content of the Pharmatext website, or knew (or had reason to know) that such content was infringing. Thus, plaintiffs fail to support with plausible facts their conclusory allegations that Chitika "must have had knowledge" of the alleged infringement of plaintiffs' books, *see* Pls.' Opp'n at 14, and that Chitika "plac[ed] ads on the Pharmatext site because [it] believe[d] that Pharmatext users – in other words, people seeking to obtain pirated copies of copyrighted books – are a target audience for particular advertisers." Am. Compl. ¶ 25.[16] The court "need not accept as true legal conclusions from the complaint or 'naked assertion[s] devoid of further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir. 2009), quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). *See also Aponte-Torres*, 445 F.3d at 55 (stating that in reviewing a Rule 12(c) motion, "[w]e ought not . . . credit 'bald

---

[16] At the hearing, plaintiffs' counsel acknowledged that a showing of knowledge at some level is required to establish liability for contributory infringement, agreeing with the court's suggestion that a showing of "willful blindness" might be sufficient to satisfy the knowledge element.

assertions, unsupportable conclusions, periphrastic circumlocutions, and the like.'").

### B.  Materiality

Finally, Chitika argues that even if it was aware that the Pharmatext website contained infringing content, it still would not be contributorily liable because it did not materially contribute to any infringement.  "Material assistance turns on whether the activity in question 'substantially assists' infringement."  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 814 (9th Cir. 2007) (Kozinski, J., dissenting), quoting *Amazon*, 487 F.3d at 729.  In *Perfect 10 v. Visa*, the owner of copyrights in images of nude models sought to impose contributory liability on Visa for processing credit card payments to the proprietors of "numerous websites" that had "stolen [Perfect 10's] proprietary images, altered them, and illegally offered them for sale online."  494 F.3d at 793.  The Ninth Circuit affirmed the district court's dismissal of the claims against Visa under Rule 12(b)(6).  Although it acknowledged that Visa's "payment systems make it easier for . . . infringement to be profitable, and . . . therefore have the effect of increasing such infringement," *id*. at 799, the Ninth Circuit emphasized that Visa's payment networks were not "the 'site' of the infringement," and Visa did not "create, operate, advertise, or otherwise promote the [infringing] websites."  *Id*. at 799-800.  Similarly, here, while Chitika's advertising payments might make it easier for Saggi's infringement to be profitable, Chitika did not create, operate, advertise, or promote the

14

infringing websites, and its advertisements were not the "site" of the infringement.[17]
*See also Livnat v. Lavi*, 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998) (dismissing contributory infringement claim against advertisers who placed ads in a magazine that published infringing photos).

Plaintiffs allege that Chitika "enabled Pharmatext to stay in the infringement business by supplying it with income." Am. Compl. ¶ 33. They make no allegations as to how much revenue Pharmatext received from Chitika,[18] or how that revenue

---

[17] Plaintiffs argue that the majority opinion in *Visa* is "flawed," and they seek to rely instead on Judge Koziniski's dissent. *See* Pls.' Opp'n at 13. However, even Judge Kozinski's dissent offers little support for plaintiffs' case against Chitika. In concluding that Perfect 10 should have had an opportunity to prove its case through discovery and trial, Judge Kozinski notes that the *Visa* case "does not present a close or difficult question: Defendants here are alleged to provide an essential service to infringers, a service that enables infringement on a massive scale. Defendants know about the infringements; they profit from them; they are intimately and causally involved in a vast number of infringing transactions that could not be consummated if they refused to process the payments; they have ready means to stop the infringements." *Visa*, 494 F.3d at 816 (Kozinski, J., dissenting). Here, in contrast to Visa, Chitika did not provide an "essential" service to Saggi that enabled infringement on a "massive scale." Plaintiffs make no factual allegations that Chitika knew about any infringing activity, nor is there any evidence that Chitika was "intimately and causally involved in a vast number of infringing transactions."

[18] Chitika, for its part, alleges that over approximately twenty-nine months, from August of 2008 through December of 2010, its payments to Pharmatext "amounted to $513.93, or approximately $17.72 per month on average." Answer ¶ 26.

substantially assisted Pharmatext's allegedly infringing activities.[19]   While the court believes that the materiality standard has not been met by plaintiffs, it need not definitively decide the issue, in light of plaintiffs' failure to plausibly allege facts demonstrating knowledge on the part of Chitika.

ORDER

For the foregoing reasons, Chitika's Motion for Judgment on the Pleadings is ALLOWED.   The Clerk will enter a dismissal of the claims against Chitika with prejudice.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[19] As Chitika points out, "Pharmatext earned advertising income when users clicked on ads that lead them *away* from the Pharmatext site."  Def.'s Reply at 8. Thus, there is not a clear link between the advertising income and the furthering of Pharmatext's allegedly infringing activities.